IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT


**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| IN RE: THE THIRTY-FIFTH STATEWIDE INVESTIGATING GRAND JURY | : | No. 197 MM 2014 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| PETITION OF: ATTORNEY GENERAL, KATHLEEN G. KANE | : | |
| | : | ARGUED: March 11, 2015 |


### OPINION ANNOUNCING THE JUDGMENT OF THE COURT


**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED: March 31, 2015**


Through the filing of an action in *quo warranto*, Pennsylvania Attorney General Kathleen G. Kane has asked this Court to quash the appointment of a special prosecutor investigating violations of grand jury secrecy requirements.

In the Spring of 2014, the supervising judge for the Thirty-Fifth Statewide Investigating Grand Jury found that there were reasonable grounds to believe that an investigation should be conducted into allegations that grand jury secrecy had been compromised. *See generally* 42 Pa.C.S. §4549(b) (providing that jurors, attorneys, interpreters, stenographers, recording-device operators, or typists shall be sworn to secrecy and may disclose matters occurring before an investigating grand jury only when so directed by the court, on pain of sanctions for contempt). The supervising judge proceeded to appoint Thomas E. Carluccio, Esquire (the "Special Prosecutor"), to investigate and prosecute any illegal disclosures. The work of the Special Prosecutor culminated in a grand jury presentment recommending the filing of criminal charges against Attorney General Kane.

Attorney General Kane, represented by private counsel, commenced the instant *quo warranto* action in December 2014, invoking this Court's jurisdiction under Section 721 of the Judicial Code. *See* 42 Pa.C.S. §721 (investing the Supreme Court with original jurisdiction of *quo warranto* matters as to officers of statewide jurisdiction). *See generally In re One Hundred or More Qualified Electors of the Municipality of Clairton*, 546 Pa. 126, 132, 683 A.2d 283, 286 (1996) (explaining that "a *quo warranto* action constitutes the proper method to challenge title or right to public office"). In her initial submission, Attorney General Kane highlighted that no statute on record in the Commonwealth authorizes the appointment of a special prosecutor for an investigating grand jury. Further, she observed that the power to investigate and prosecute is reposed in the executive branch. In particular, Attorney General Kane noted that, under the Investigating Grand Jury Act,[1] local district attorneys and the Attorney General or her designee are the only officials authorized to serve as an "Attorney for the Commonwealth." 42 Pa.C.S. §4542. Additionally, she explained that, per the Commonwealth Attorneys Act,[2] the authority to convene and conduct statewide investigating grand juries is reposed exclusively in the elected office which she holds. *See* 71 P.S. §732-206(b).

For the above reasons, Attorney General Kane asserted that the appointment by the judicial branch of a private attorney to serve as a "special prosecutor" violated the separation-of-powers doctrine. *See generally Jubelirer v. Rendell*, 598 Pa. 16, 41, 953 A.2d 514, 529 (2008) (explaining that this principle "forbids any branch [of government] from exercising the functions exclusively committed to another branch"). Moreover, she contended, the appointment specifically contravened this Court's decision in *Smith v.*

---

[1] Act of October 5, 1980, P.L. 693, No. 142 (as amended 42 Pa.C.S. §§4541-4553).

[2] Act of October 8, 1980, P.L. 950, No. 164 (as amended 71 P.S. §§732-101 - 732-506).

*Gallagher*, 408 Pa. 551, 185 A.2d 135 (1962), *overruled on other grounds by In re Biester*, 487 Pa. 438, 442, 409 A.2d 848, 850 (1979), which emphasized the importance of maintaining the appropriate separation of powers among branches of government and strongly disapproved the convening of a "special grand jury" and an appointment of a special prosecutor in connection with the proceedings before such entity. *See, e.g.*, *id.* at 567-68, 185 A.2d at 143.

In response, the Special Prosecutor maintained that a grand jury supervising judge possesses plenary power to supervise the proceedings of the investigating grand jury and to appoint a special prosecutor where warranted. According to the Special Prosecutor, "[t]he implications for continued government corruption or serious breaches of grand jury secrecy, unabated by the review of a grand jury, such as here, are glaringly obvious." Memorandum in Support of Answer of Special Prosecutor at 4; *see also id.* at 5 ("[I]t is respectfully asserted that the conflicts of interest so clearly associated with the [Office of Attorney General] conducting an investigation of itself on matters pertaining to violations of grand jury secrecy represent a position which is irresponsible.").

In an initial opinion in support of the appointment, the supervising judge relied on *In re Dauphin County Fourth Investigating Grand Jury*, 610 Pa. 296, 19 A.3d 491 (2011). There, this Court recently observed that "[t]he very power of the grand jury, and the secrecy in which it must operate, call for a strong judicial hand in supervising the proceedings" and indicated that, "[w]hen there are colorable allegations or indications that the sanctity of the grand jury process has been breached and those allegations warrant investigation, the appointment of a special prosecutor to conduct such an investigation is appropriate." *Id.* at 318, 19 A.3d at 503-04. Further, the supervising judge commented:

The Supervising Judge of a Statewide Investigating Grand Jury must have inherent authority to investigate a grand jury leak, when there is a conflict of interest as there is here. Clearly, Attorney General Kane could not investigate herself. Otherwise potentially serious violations of grand jury secrecy could go unaddressed.

*In re Thirty-Fifth Statewide Investigating Grand Jury*, No. 2644-2012, *slip op.* at 4 (C.P. Montgomery Dec. 30, 2014). The supervising judge also explained that, at the time he appointed the Special Prosecutor, he informed then-Chief Justice Castille of the action and asked to be advised if he had erred or exceeded his authority. *See id.* at 4.

Upon consideration of these submissions, this Court granted leave to file original process and directed the parties to file supplemental briefs discussing the apparent tension between the *Smith* and *Dauphin County* decisions, as well as the legislative history surrounding the appointment of special prosecutors in Pennsylvania.

In her supplemental briefs, Attorney General Kane maintains particular emphasis on the *Smith* decision. She explains that, in that case, this Court had reviewed the appointment of an attorney as "special prosecutor" by a judge of the Court of Quarter Sessions of Philadelphia County, who charged him with conducting an investigation using a "special grand jury." *Smith*, 407 Pa. at 556, 185 A.2d at 137. Attorney General Kane stresses the strong admonitory language employed by the Court in its disapproval of the attempt by a judicial officer to fill "an office which does not exist" under Pennsylvania law. *Id.* at 556, 185 A.2d at 137; *see also id.* at 580, 185 A.2d at 149 ("[T]here is no public office in Pennsylvania known as Special Prosecutor."). For example, she quotes the Court's criticism of "what can occur when the regular forms and procedure of government are not followed, and judges embark on independent ventures, sailing in ships without sails of authority, using engines devoid of constitutional power and employing a compass lacking decisional direction." *Id.* at 562, 185 A.2d at 140. Attorney General Kane also develops that the *Smith* Court grounded

its decision in separation-of-powers principles. *See id.* at 583, 185 A.2d at 151 (indicating that the appointing jurist had "disfranchise[d] the people of Philadelphia in the realm of their freedom to select a District Attorney of their own choice").

As further support for her challenge, Attorney General Kane points to the now-expired Independent Counsel Authorization Act.[3] She explains that this enactment had expressly sanctioned the appointment of a special prosecutor to oversee an investigation into allegations that a person with statutorily-defined ties to the Office of Attorney General had engaged in certain criminal conduct which otherwise would reside within that office's exclusive investigative jurisdiction. *See* 18 Pa.C.S. §§9312, 9315. It is Attorney General Kane's position that the Independent Counsel Authorization Act would have applied in the instant circumstances, had the enactment not expired according to its own terms. In the absence of such statutory authority, Attorney General Kane contends, the judiciary lacks the power and prerogative to appoint a special prosecutor. Along these lines, Attorney General Kane refers to the legislative history of the Independent Counsel Authorization Act, and, in particular, supportive comments of the Honorable Albert H. Masland during his term as a member of the Pennsylvania House of Representatives, to the effect that: "I truly believe that this measure is essential to us, and without it, *there really is nothing to take its place*." Pa. House Legislative Journal, June 10, 1997, at 1247 (emphasis added).

As to the *Dauphin County* decision, Attorney General Kane distinguishes the circumstances presented there on the basis that the Court had restricted the authority of the appointed special prosecutor to the conduct of an investigation and the issuance of a report. *See Dauphin County*, 610 Pa. at 309-11, 19 A.3d at 499. According to Attorney General Kane, the special prosecutor's role in the *Dauphin County* scenario

---

[3] Act of February 18, 1998, P.L. 102, No. 19 (previously 18 Pa.C.S. §§9301-9352).

would be more accurately described as being in the nature of a "special master." Supplemental Reply Memorandum of Attorney General Kane at 11 & n.9 (quoting BLACK'S LAW DICTIONARY 990 (7th ed. 1999) (defining "special master" as a "master appointed to assist the court with a particular matter or case")).

Finally, Attorney General Kane highlights that the confidential information in issue was the subject of a previous grand jury proceeding and not any proceedings before the Thirty-Fifth Statewide Investigating Grand Jury. In this regard, it is her position that a supervising judge has no power to grant authority to investigate and prosecute an alleged historical breach of grand jury confidentiality.

In a supplemental opinion, the supervising judge relies upon Section 323 of the Judicial Code, which invests courts with the power to issue "every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction[.]" 42 Pa.C.S. §323; *see also* Supplemental Opinion in *In re Thirty-Fifth Statewide Investigating Grand Jury*, No. 197 MM 2014, *slip op.* at 7 (Carpenter, J., Feb. 18, 2015) ("A supervising judge of an investigating grand jury must possess [the] inherent power to enforce the traditional rule of secrecy over grand jury proceedings because of the very nature of those proceedings."). This allocation, the supervising judge explains, is consistent with the concept of inherent or implied powers in the judiciary and the prevailing common-law approach. *Accord Dauphin County*, 610 Pa. at 318, 19 A.3d at 504; *cf. Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 53, 274 A.2d 193, 197 (1971) (recognizing inherent power in the courts to "preserve the efficient and expeditious administration of Justice and protect it from being impaired or destroyed").

The supervising judge regards the *Smith* decision as being inapposite and limited to its facts, because it concerned the unlawful empanelment of a "special grand jury" and inappropriate displacement of a district attorney, *see Smith*, 408 Pa. at 556-57, 185 A.2d at 137, not grand jury secrecy or the mechanism by which to address breaches which may have been occasioned by members of the Office of Attorney General. According to the supervising judge, his appointment of a special prosecutor was necessary "because Attorney General Kane was not going to investigate a violation of [law] that she caused to occur due to her inherent conflict of interest." Supplemental Opinion in *Thirty-Fifth Statewide Investigating Grand Jury*, No. 197 MM 2014, *slip op.* at 10. The supervising judge concludes that "*In re Dauphin County* demonstrates that judicial appointment of a special prosecutor is appropriate and necessary when violations of grand jury secrecy are at issue and are alleged to have been committed by those in the normal chain of command, i.e., the executive branch." *Id.* at 21-22.

The Special Prosecutor's brief is consistent with the opinion of the supervising judge. He also takes issue with Attorney General Kane's portrayal of his authority as being unbridled. *See, e.g.*, Brief for the Special Prosecutor at 8 ("The appointment was made within refined and well-focused parameters, and the appointed Special Prosecutor was not authorized by the Order to pursue investigation of other matters, in an indiscriminate manner, or for an indeterminate time period.").[4]

---

[4] Both the supervising judge and the Special Prosecutor have advanced the position that the *quo warranto* challenge is moot, given the issuance of a presentment. We find, however, that the matter is capable of repetition and of sufficient public importance that the mootness arguments need not be considered further. *See, e.g.*, *Consumers Ed. & Protective Ass'n v. Nolan*, 470 Pa. 372, 383, 368 A.2d 675, 681 (1977) (relying on such exceptions to the mootness doctrine in declining to dismiss).

The supervising judge and Special Prosecutor also believe that Attorney General Kane waived any challenge to the Special Prosecutor's authority by failing to raise a contest (continued…)

Upon our review, as a preliminary matter, we note that the use of the *quo warranto* device to challenge the Special Prosecutor's authority is questionable. In this regard, Rule of Appellate Procedure 3331 affords an explicit procedural avenue for challenging the appointment of a special prosecutor. *See* Pa.R.A.P 3331(a)(1) (providing for review, pursuant to Chapter 15 of the Rules of Appellate Procedure of an order relating "to the appointment, supervision, administration or operation of a special prosecutor"). This rule was designed "to provide a simple and expeditious method for Supreme Court supervision of special prosecutions and investigations, *e.g.*, orders of the supervising judge of an investigating grand jury[.]" *Id.*, Note. The Court, accordingly, has treated its review orders within the scope of Rule 3331 – including those appointing special prosecutors – as a matter resting within its supervisory

---

(…continued)

earlier, cooperating in the leaks investigation, and appearing under subpoena to give testimony before the grand jury during the course of such investigation. At least as concerns government employees, however, this Court has relaxed the requirement to suffer contempt in order to advance a challenge to a subpoena issued in the context of grand jury proceedings. *See In re Thirty-Third Statewide Investigating Grand Jury*, ___ Pa. ___, ___, 86 A.3d 204, 209-10 (2014). We take a similar approach with regard to Attorney General Kane's decision to appear and give testimony, which we conclude should not prejudice her ability to challenge the lawfulness of the Special Prosecutor's appointment, at least insofar as we permit her to proceed with her *quo warranto* action over and against the procedural concerns discussed below. The delay in Attorney General Kane's assertion of a *quo warranto* challenge also will not be deemed controlling here.

It is a different question whether the *de facto* officer doctrine would apply to validate the Special Prosecutor's actions while he served under a presumptively valid court order, should his appointment ultimately be deemed invalid. *See generally State Dental Council & Examining Bd. v. Pollock*, 457 Pa. 264, 268, 318 A.2d 910, 913 (1974) (discussing the *de facto* legitimacy of the acts of public officials while holding colorable claims to public office). In light of our disposition, below, in which we uphold the Special Prosecutor's appointment, we need not reach the question of *de facto* legitimacy in the present setting.

prerogative.  This approach contrasts with *quo warranto* review, which, when it pertains, generally serves as a "sole and exclusive" avenue for pursuing relief.  *In re Stout*, 521 Pa. 571, 576, 559 A.2d 489, 492 (1989) (quoting *Spykerman v. Levy*, 491 Pa. 470, 484, 421 A.2d 641, 648 (1980)).

In the present instance, however, we acknowledge that an action in *quo warranto* facially would seem to lie, at least independent of our procedural rules.  Moreover, as the Special Prosecutor has in fact served in the role of a *de facto* public official (regardless of whether the *de facto* official doctrine ultimately would be deemed to apply to his actions were his appointment deemed invalid, *see supra* note 4), we will proceed to consider Attorney General Kane's challenge on the merits.  *Cf. Stout,* 521 Pa. at 576, 559 A.2d at 492 (explaining that a writ of *quo warranto* may be used to address an unlawful exercise of authority by a *de facto* public official).  For prospective purposes, however, we clarify that the Rules of Appellate Procedure provide the appropriate mechanics for contesting the appointment, supervision, administration, or operation of a special prosecutor.  *See, e.g.*, Pa.R.A.P. 3331.  Additionally, as a practical matter -- particularly to the degree the *de facto* officer doctrine would apply -- a timely challenge under Rule 3331 may be the only viable method for attacking the effect of such appointments.[5]

As to the merits of the *quo warranto* challenge, we observe that, via the Investigating Grand Jury Act, the Legislature has charged supervising judges with the substantial responsibility of maintaining the required confidentiality of grand jury proceedings, on pain of contempt sanctions.  *See* 42 Pa.C.S. §4549(b).  A supervising judge also is authorized to bring alleged offenses to the attention of an investigating

---

[5] Rule 3331 permits timely review of such orders by authorizing the filing of challenges within ten days after entry.  *See* Pa.R.A.P. 3331(a) (cross-referencing Pa.R.A.P. 1512(b)(3)).

grand jury. *See id.* §4548(a). Finally, supervising judges enjoy general powers required for or incidental to the exercise of jurisdiction. *See* 42 Pa.C.S. §323.

We view these provisions, collectively, as affording sufficient authorization to a supervising judge – and, in fact, as creating the necessity -- to appoint a special prosecutor in scenarios in which a grand jury may be considering potential criminal conduct on the part of an Attorney for the Commonwealth (as defined in the Investigating Grand Jury Act, *see* 42 Pa.C.S. §4542) or a closely affiliated official. Indeed, as the supervising judge and the Special Prosecutor presently argue, Section 323 serves to codify aspects of the courts' non-particularized powers, often referred to as inherent, implied, and/or incidental in nature. Notably, these have been relied upon, in many other jurisdictions, as support for the court appointments of special prosecutors.[6] Although the structure imposed by the now-lapsed Independent Counsel

---

[6] *See, e.g.*, *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795, 107 S. Ct. 2124, 2131-32 (1987); *In re Disqualification of Cirigliano*, 826 N.E.2d 287, 288 (Ohio 2004) ("[C]ourts of common pleas possess inherent power to appoint special prosecutors in criminal matters." (quoting *State ex rel. Master v. Cleveland*, 661 N.E.2d 180, 184 (Ohio 1996))); *State ex rel. Friedrich v. Circuit Court for Dane Cnty.*, 531 N.W.2d 32, 38 (Wis. 1995) (explaining that, "despite the existence of statutes authorizing circuit courts to appoint special prosecutors, the courts' power to appoint special prosecutors is gleaned from the courts' inherent power" (citation omitted)); *State v. Hoegh*, 632 N.W.2d 885, 890 (Iowa 2001) ("We confirm the inherent power of district courts to appoint special prosecutors when necessary for the administration of justice."); *State ex rel. Goodwin v. Cook*, 248 S.E.2d 602, 607 (W. Va. 1978) ("Other jurisdictions confronted with the problem of the temporary disqualification of the prosecuting attorney have generally sanctioned the authority of the court, under its inherent power to administer the judicial system, to appoint a special prosecutor. . .. This appears to be the common law rule." (citations omitted)); *Weems v. Anderson*, 516 S.W.2d 895, 898 (Ark. 1974) (observing that a circuit court had the inherent power to appoint a special prosecutor, notwithstanding the lack of specific statutory authority); *State v. Ellis*, 112 N.E. 98, 102 (Ind. 1916) (collecting cases for the proposition that a court has authority to appoint a special prosecutor, where the regular one was disqualified); *Taylor v. State*, 38 So. 380, 383-85 (Fla. 1905) (same); *State v. Eckelkamp,* 133 S.W.3d 72, 74 (Mo. Ct. App. 2004) ("[T]he power to appoint a special prosecutor is not limited by the statutory (continued…)

Authorization Act or a statutory analogue might be preferable, we conclude that the prevailing absence of statutory guidance is not disabling in terms of the essential appointment power of grand jury supervising judges.[7]

Regarding the separation-of-powers concern, this Court has strongly defended the independent role of the judiciary in vindicating the authority ascribed to it by the Constitution, particularly as relates to conduct which is contemptuous of a court. *See, e.g.*, *Commonwealth v. McMullen*, 599 Pa. 435, 448, 961 A.2d 842, 850 (2008) (holding that a statutory limitation on punishment for indirect criminal contempt was

---

(…continued)

grounds . . .; rather, it is a power inherent in the court, to be exercised in the court's sound discretion, when for any reason, the regular prosecutor is disqualified."). *See generally* 27 C.J.S. DISTRICT AND PROSECUTING ATTORNEYS §88 (2014) ("The absence or incapacity of the regular incumbent is ordinary grounds, pursuant to statute *or under a court's inherent or constitutional powers*, for appointment of a substitute district or prosecuting attorney[.]" (emphasis added)).

[7] We note that the Special Prosecutor himself has seen fit to submit to a particular safeguard and check on the power with which he was invested, as he has not sought to initiate an affirmative prosecution but, rather, he has acceded to the submission of the grand jury presentment to the duly elected district attorney in Montgomery County for her consideration.

Responsive to Mr. Justice Baer's concurrence, we do not presently vindicate the pursuit of an actual prosecution by a special prosecutor appointed by a supervising judge, since those are not the facts before us. *See Maloney v. Valley Med. Facilities, Inc.*, 603 Pa. 399, 411, 984 A.2d 478, 485-86 (2009) (explaining that the holding of a decision is to be read against its facts). Rather, the propriety of such a prosecution would appear to remain an issue of first impression in this Court. While we recognize that many of the authorities we have referenced have sanctioned actual prosecutions, such an imperfect overlap (between the circumstances involved in cases surveyed and those presently before a reviewing court) often occurs within any survey of a legal landscape. In any event, litigants in Pennsylvania will be free to bring to the courts' attention any material distinctions bearing on whether a special prosecutor may exercise the broader range of powers, upon an appropriate challenge to such exercise. *Cf. id.* at 419, 984 A.2d at 491.

unconstitutional, as it offended the inherent authority of courts to punish such affronts).[8] The United States Supreme Court has also recognized the need for the judiciary to uphold its own authority in the contempt arena. *See, e.g.*, *Young*, 481 U.S. at 796, 107 S. Ct. at 2131-32. Along these lines, that Court has sanctioned the appointment of special prosecutors to redress contempt, explaining:

> The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches. "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S. Ct. 492, 501, 55 L.Ed. 797 (1911). As a result, "there could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience." *Ibid.* Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated. The ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without which courts would be "mere boards of arbitration whose judgments and decrees would be only advisory." *Ibid.*

*Id.* (footnote omitted).

For the above reasons, we reaffirm the position taken by the Court in *Dauphin County* and conclude that the supervising judge acted within his authority and sound prerogative in appointing the Special Prosecutor. *See Dauphin County*, 610 Pa. at 318, 19 A.3d at 504 ("When there are colorable allegations or indications that the sanctity of

---

[8] This author took a different view, in *McMullen*, concerning the Court's decision to invalidate the statute. *See McMullen*, 599 Pa. at 457-59, 961 A.2d at 855-56 (Saylor, J., concurring and dissenting).

the grand jury process has been breached and those allegations warrant investigation, the appointment of a special prosecutor to conduct such an investigation is appropriate.").[9] We also agree with the supervising judge and the Special Prosecutor that the *Smith* decision is distinguishable on the basis that it involved an unlawful "special grand jury" and the displacement of a non-conflicted elected official from the performance of his duties according to an established statutory regime.[10]

Finally, we differ with Attorney General Kane's position that a distinction should be made between current and historical breaches of grand jury secrecy. Although a supervising judge, in his or her discretion, may regard a historical breach in a different light than a present one, both are equally affronts to the dominant and ongoing requirement of confidentiality which supervising judges are charged with enforcing. *Cf. United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 986 (1958) ("The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow."). Moreover, sitting supervising judges are in the best position to address even historical breaches, since such infractions arise from confidential proceedings with which such jurists are most intimately associated, and particularly where the previous supervising judge is unavailable. Again, although we recognize that there are legitimate concerns

---

[9] In this regard, we differ with Justice Baer's position that appointees should be characterized as "special masters" rather than "special prosecutors." Because the preparation and submission of presentments to investigating grand juries are actions reserved to prosecutors, *see* 42 Pa.C.S. §4551(a), in our considered judgment, the term "special prosecutor" is most appropriate here.

[10] *See Smith*, 408 Pa. at 556-57, 185 A.2d at 137; *see also Gwinn v. Kane*, 465 Pa. 269, 280-81, 348 A.2d 900, 906-07 (1975) (characterizing portions of *Smith* as *dicta*, including its suggestion that the office of special prosecutor could not be constitutionally sanctioned). *See generally Maloney*, 603 Pa. at 415, 984 A.2d at 488 (explaining that the holding of a decision is to be read against its facts).

arising out of a judicial appointment of a special prosecutor, we follow the approach of the United States Supreme Court and the many other jurisdictions which have found such appointments proper as an essential means to vindicate the courts' own authority. *See, e.g.*, *Young*, 481 U.S. at 796, 107 S. Ct. at 2131-32; *see also supra* note 6.[11]

The request for *quo warranto* relief is denied.

Mr. Justice Eakin joins this opinion.

Mr. Justice Baer files a concurring opinion.

Mr. Justice Stevens files a concurring opinion.

Madame Justice Todd files a dissenting opinion.

---

[11] The concurrences discuss a range of matters beyond the subject of this opinion. Presently, our own review is confined to the focused *quo warranto* challenge to the supervising judge's power to appoint a special prosecutor which has been put before us. Nevertheless, we take this opportunity to observe that, from our perspective, the remarks of our colleagues in concurrence do not reflect a developed consideration of the collateral matters which they raise.

For example, in terms of the responsive commentary raising *ex parte* concerns, it is essential to bear in mind that the grand jury process, by its nature, requires confidential interaction and communications between a supervising judge and attorneys for the Commonwealth. Subjects of investigations are not privy to these interactions precisely because they are not parties, *accord* 42 Pa.C.S. §4549(b) (requiring secrecy in grand jury matters), and it follows that the communications cannot be deemed "*ex parte*" in the usual sense of the term. In other words, the general prohibition of communications between a judge and less than all parties -- as well as the due process concerns raised in the concurring opinions -- ordinarily would not be relevant merely because a subject of the investigation is absent from some part of the inquiry. Moreover, to the extent a particular action by a supervising judge may be subject to challenge by an individual, it would be necessary to consider whether confidentiality was employed in the criticized proceedings for the protection of grand jury witnesses (as such protection is one of the important aims of the Legislature in providing for grand jury secrecy).

Beyond observing the incompleteness in the development of the collateral issues raised by way of concurrence, we decline to engage in a further dialogue concerning matters which are not presently before the Court.