J-S26026-19

2019 PA Super 356

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DEMETRIUS MAYFIELD | : | |
| | : | |
| Appellee | : | No. 2811 EDA 2018 |

Appeal from the Order Dated September 19, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006367-2016

BEFORE:   PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI*, J.

OPINION BY GANTMAN, P.J.E.:                    **FILED DECEMBER 16, 2019**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which removed the Office of the Philadelphia District Attorney ("DA") and appointed a special prosecutor, in this revocation of probation case.  For the following reasons, we transfer the appeal to the Supreme Court of Pennsylvania.

The relevant facts and procedural history of this case are as follows.  On June 15, 2016, police executed a search warrant at a suspected drug house in Philadelphia.  During the search, police located Appellee, Demetrius Mayfield, sleeping in a bedroom.  Police recovered a handgun from the bedroom.  On May 15, 2018, Appellee entered a negotiated guilty plea to one count of persons not to possess firearms.[1]  The court accepted Appellee's plea

_____

[1] 18 Pa.C.S.A. § 6105.

_____

*   Retired Senior Judge assigned to the Superior Court.

as knowing, intelligent, and voluntary, and imposed the negotiated sentence of 11½ to 23 months' imprisonment, plus three years' probation. The court awarded Appellee credit for time served and released him on immediate parole with the following conditions: seek and maintain legitimate employment, attend vocational training and parenting classes, submit to random drug/alcohol screens and home and vehicle checks for drugs and weapons, and stay away from the 5300 block of Lesher Street and any co-defendant(s). The court said the plea deal was "very generous" and cautioned Appellee "not [to] come back…." (N.T. Guilty Plea Hearing, 5/15/18, at 17; R.R. at 30a).

On July 9, 2018, while Appellee was on parole, police approached a vehicle parked in the wrong direction on a one-way street. Appellee was in the driver's seat with a male passenger. Officers conducted a search of the vehicle and found drugs and two guns. The Commonwealth subsequently charged Appellee at docket No. CP-51-CR-0006274-2018, with various drug and firearms offenses ("new charges").

The Adult Probation and Parole Department ("Department") issued a *Gagnon I* summary[2] on July 11, 2018, that stated Appellee's new charges

_____

[2] *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *See also Commonwealth v. Ferguson*, 761 A.2d 613 (Pa.Super. 2000) (explaining that when parolee or probationer is detained pending revocation hearing, due process requires determination at pre-revocation hearing (*Gagnon I* hearing) of probable cause to believe violation was committed; upon finding of probable cause, second, more comprehensive hearing (*Gagnon II* hearing) follows before court makes final revocation decision).

constituted the only "potential direct violations" of his parole/probation and recommended a detainer. The Department issued a *Gagnon II* summary on July 26, 2018, expressly asking the trial court to wait until final disposition of the new charges before proceeding with a revocation hearing, with the detainer to remain. On August 2, 2018, the court appointed defense counsel and scheduled a "status of counsel" conference for August 31, 2018.

The parties appeared before the court on August 31, 2018. Although the court listed the proceeding as a "status of counsel" conference, the court immediately directed the Commonwealth to file a motion to revoke Appellee's parole/probation, based on Appellee's new charges, and to subpoena the police officers involved with the new charges for a revocation hearing. The Assistant District Attorney ("ADA") informed the court a new internal policy required approval from a supervisor to file a motion for revocation prior to disposition of new charges. The ADA said she would subpoena the police officers to comply with the court's directive but confirmed she did not have the authority to file the revocation motion when the new charges were still pending. Notwithstanding the ADA's representations, the court directed her to file the motion and emphasized the "extremely generous" plea deal Appellee had received for "an extremely serious pistol whipping." (N.T. Hearing, 8/31/18, at 4-5; R.R. at 35a-36a). The ADA informed the court Appellee's case did **not** involve a "pistol whipping." The court conceded its error but still demanded the ADA to prepare for a revocation hearing on September 19,

2018. Regarding the revocation hearing, the court made clear it wanted to "knock this one out." (*Id.* at 4; R.R. at 35a).

The parties appeared before the court again on September 6, 2018, at the Commonwealth's request. A different ADA represented the Commonwealth and attempted to clarify the recent policy requiring the ADA to seek approval to file a revocation motion before disposition of new charges. The ADA said his superior, the First Assistant of the DA's office, had denied the request in this case. The ADA explained prosecutorial discretion lies with the DA, not the court, to determine whether to proceed immediately to a revocation hearing or to defer revocation until disposition of the new charges. The court responded: "The underlying facts of this case were horrendous" and Appellee's negotiated sentence was "well below any guidelines that were applicable." (N.T. Hearing, 9/6/18, at 6; R.R. at 40a). The court emphasized the new charges were "very serious, very serious accusations and potentially very significant violations of [the court's] order of sentence." (*Id.* at 11-12; R.R. at 41a). The court also said it had the authority to grant or deny a request to defer a revocation proceeding pending disposition of new charges and would not wait until disposition of the new charges in this case. The court further stated it could decide whether Appellee had violated the terms of his parole/probation "independent of whether or not the Commonwealth decides to do [its] job." (*Id.* at 13; R.R. at 42a). Notwithstanding the ADA's requests to continue the revocation matter, pending disposition of the new charges, the

court ordered the ADA to subpoena the police officers involved with Appellee's new charges and to appear for the revocation proceeding as scheduled for September 19, 2018.

On September 19, 2018, the parties appeared for the scheduled revocation hearing. Defense counsel objected to going forward with the revocation hearing mainly because: (1) the Commonwealth did not file a request for revocation per Pa.R.Crim.P. 708 (requiring written request for revocation to be filed with clerk of courts), and the Department, defense counsel, and ADA agreed to defer the revocation proceeding until disposition of the new charges; (2) the court acted as an advocate for the Commonwealth instead of a neutral fact-finder; (3) the court improperly directed the Commonwealth to file a revocation motion and subpoena police officers, over the Commonwealth's objections; (4) defense counsel had not yet received the transcript for the preliminary hearing related to the new charges, so counsel would be unable to represent Appellee effectively at the revocation hearing; (5) Appellee retained private counsel to represent him concerning the new charges and wanted private counsel to represent him in the revocation proceedings as well; and (6) Appellee's co-defendant related to the new charges told police the guns and drugs belonged to him, but defense counsel would not be able to call the co-defendant as a witness in the revocation proceedings while an open case was still pending against the co-defendant, due to Fifth Amendment concerns.

In response, the court indicated its order, directing the ADA to subpoena police officers and scheduling a revocation hearing, constituted sufficient written notice under Rule 708. The court also noted the different burden of proof at a trial on Appellee's new charges versus the lower burden of proof at a revocation hearing. The court further emphasized Appellee's right under Rule 708 to a revocation hearing held "as speedily as possible." Appellee expressly waived his right to a speedy revocation hearing, but the court told the Commonwealth to call its first witness concerning revocation. The hearing continued as follows:

> [THE COMMONWEALTH]: Your Honor, despite my personal views and the propriety of this proceeding, I'm under very strict instructions from people who probably should be here themselves not to participate in this hearing.
>
> [THE COURT]: When were you folks going to let me know that?
>
> [THE COMMONWEALTH]: I apologize, your Honor. I thought that was the understanding.
>
> [THE COURT]: Are you saying to me that the Commonwealth of Pennsylvania is not going to be represented by the District Attorney's Office of Philadelphia in this matter?
>
> [THE COMMONWEALTH]: The police officers are here, your Honor.
>
> [THE COURT]: No. No. No. Listen to my question, [counsel].
>
> Are you saying that the Commonwealth of Pennsylvania is not going to be represented by the District Attorney's Office of Philadelphia at this revocation hearing; yes or no?

> [THE COMMONWEALTH]: If I understand the question correctly, I believe that the answer would be no because—
>
> [THE COURT]: Thank you. Have a seat.
>
> I'm appointing a special prosecutor to represent the Commonwealth of Pennsylvania…. … The District Attorney's Office has removed itself.
>
> * * *
>
> Let the record reflect that the District Attorney's [Office] of Philadelphia has withdrawn its representation from the Commonwealth of Pennsylvania at the revocation hearing on this matter.

(N.T. Hearing, 9/19/18, at 46-48; R.R. at 56a). Immediately following the hearing, the Commonwealth filed a motion to reconsider in the trial court and a notice of appeal in this Court.

The next day, the parties (including the court-appointed special prosecutor) appeared before the court. The Assistant Supervisor of the law division in the DA's office appeared to clarify that the DA's office had not "removed itself" from the proceedings but was exercising prosecutorial discretion to defer revocation until disposition of Appellee's new charges. The court informed the Commonwealth that deferring the revocation proceeding would infringe on Appellee's right to a speedy revocation hearing. Defense counsel reminded the court that Appellee had waived his right to a speedy revocation hearing. The hearing continued as follows:

> [THE COURT]: I understand that [Appellee waived his right to a speedy revocation hearing]. And this court has a duty to proceed. And I can grant or deny the request to continue the case. This court's authority is what

- 7 -

is at issue. Whether or not [Appellee] disobeyed the order of sentence in any way, shape or form or the terms of supervision therein. In this particular case, sir, it is my discretion to go forward. I have that discretion under the case law as I understand it.

\* \* \*

Now, I do not need to wait for the disposition of his open case to make a fair determination as to what occurred there because that matter also had been held for court. A *prima facie* case has been demonstrated. So there is sufficient reason, number one, for detention. Number two, to proceed with a hearing. And I am not going to have you or anybody else from the District Attorney's Office sit there and think that because you refuse to do your job and represent the interests of the Commonwealth of Pennsylvania, which it includes public safety. I'm going to do my job, sir.

So since you have told me that you are not going to represent the Commonwealth of Pennsylvania at a revocation hearing that will be held in due course, sir; and I am not waiting for his open case to be resolved, I have to replace you with somebody else. Actually I'm not replacing. I'm putting someone in there since you are not going to do it.

So you may step back. Your petition for reconsideration is denied.

[THE COMMONWEALTH]: Your Honor, can I make our position clear for the record?

[THE COURT]: You did. You did. And so did [the other two ADAs]. Given the position of this office not to go forward in the matter as it should, you left the [ADA] standing before me without the ability to explain. That's not proper. That is disrespectful to him. Disrespectful to me and duly noted, sir.

What else do you want to tell me?

[THE COMMONWEALTH]: Just that we filed a notice of appeal under this court's order yesterday with the Superior

- 8 -

Court which in due course to this court will receive a copy of our notice of appeal.

[THE COURT]:                   Okay.

[THE COMMONWEALTH]:  And I just reiterate the grounds stated in the petition.  Particularly emphasizing that the Supreme Court of this state has said that the preferred method of dealing with situations like this is to wait until the resolution of the open matter.

[THE COURT]:                   Sir, the preferred method is to do justice and have parties on both sides representing their appropriate interests appropriately.

[THE COMMONWEALTH]:  Which we will do.  Which we will do.

[THE COURT]:                   No.  No.  There have been many cases similarly situated where the Commonwealth not only sought to go forward.  Insisted appropriately, sir.  Appropriately.  But now in people similarly situated, we're not going forward for whatever reason since no reason was given to this court.

Sir, the preferred method is to have the Commonwealth represented by due representation.

[THE COMMONWEALTH]:  Which will occur.

[THE COURT]:                   I'm not seeing it here.

[THE COMMONWEALTH]:  Which will occur in the event of this person being convicted of the crimes that he's presently accused.

[THE COURT]:                   Well, since the Commonwealth is refusing to represent the Commonwealth—since the [DA's] Office rather of Philadelphia is refusing to represent the Commonwealth of Pennsylvania in this revocation that will occur within the next two weeks, sir, I have to put somebody there to represent the interests of the Commonwealth of Pennsylvania.  And I am extremely, extremely saddened to have to be the person who has to put someone in there to

represent the interests of the Commonwealth which includes the people of this city and their right to be safe.

You're excused.

Now, give [the special prosecutor] the discovery as I directed.

[DEFENSE COUNSEL]:    Your Honor, just for the record, please note my objection to the appointing of a special prosecutor. I'm not sure what authority the court has to appoint a—

[THE COURT]:    Somebody has to do.

[DEFENSE COUNSEL]:    —defense attorney as a special prosecutor. I hope his malpractice insurance covers prosecution.

[THE COURT]:    It's a court appointment.

[DEFENSE COUNSEL]:    I understand. That doesn't mean you can appoint anyone to anything.

[THE COURT]:    Actually, sir, I'm well within my authority to appoint someone on behalf of the Commonwealth of Pennsylvania since there is nobody in that chair that's going to represent the Commonwealth of Pennsylvania otherwise.

[DEFENSE COUNSEL]:    Judge, unless I'm misunderstanding, the Commonwealth is representing this case. They are choosing not to proceed with the revocation hearing at this point, which the docket—

[THE COURT]:    It's not their choice to make. I decided that the revocation hearing to determine whether or not [Appellee] violated the orders of sentence is well within my authority to do so, sir. And I refer you to the case law that says exactly that.

[DEFENSE COUNSEL]:    I understand, Judge. Just note my objection for the record.

[THE COURT]:     Got it.

[DEFENSE COUNSEL]:     I don't think the court has the authority to appoint a special prosecutor.  The Attorney General's Office could be referred, but they would have to choose in their discretion and pursuant to the statute.

[THE COURT]:     They can't.

[DEFENSE COUNSEL]:     They can't because there's a statute outlining that.  So I don't know what law—

[THE COURT]:     Their authority is within a specific statute.  This is not qualified within that specific statute, sir.

[DEFENSE COUNSEL]:     If I may, and I don't mean to disrespect your Honor, what statute or authority does this court have to appoint a defense attorney as a special prosecutor in this case?

[THE COURT]:     Look it up.

[DEFENSE COUNSEL]:     If you could provide me a citation.

[THE COURT]:     You don't get to tell me what I have to say or do.

[DEFENSE COUNSEL]:     I don't, Judge.

[THE COURT]:     Your objection is noted.  It is overruled.

[DEFENSE COUNSEL]:     Yes, your Honor.

[THE COURT]:     [The court-appointed special prosecutor] is representing the Commonwealth of Pennsylvania in the revocation hearing that will proceed in due course.

(N.T. Hearing, 9/20/18, at 8-17; R.R. at 62a-65a).  Following the hearing, the

Commonwealth filed a motion to stay the proceedings pending appeal.

- 11 -

On September 27, 2018, two ADAs, defense counsel, and the court-appointed special prosecutor appeared regarding the Commonwealth's motion to stay. Although the court had orally denied the Commonwealth's motion for reconsideration at the September 20, 2018 hearing, the court did not receive the written motion for reconsideration until after the hearing, so the court permitted the Commonwealth to argue the motion for reconsideration. Regarding its reconsideration motion, the Commonwealth alleged, *inter alia*: (1) the court lacked authority to remove the DA from the case; (2) Pennsylvania Supreme Court precedent authorizes and encourages the DA to wait until resolution of new charges before revoking probation; (3) the Commonwealth's decision to wait until resolution of the new charges before proceeding to a revocation proceeding constituted proper representation of the Commonwealth; (4) requiring the Commonwealth to go forward with revocation prior to disposition of the new charges would create a host of appellate issues including, but not limited to, a scenario where Appellee is acquitted of the new charges but has already been resentenced in the revocation proceeding; and (5) Appellee is currently incarcerated, so he is not presently endangering society or the public.

With respect to the motion to stay, the Commonwealth claimed the court lacked authority to proceed with the revocation hearing while the matter was pending on appeal, except to grant the Commonwealth's motion for reconsideration. The ADA also clarified that the DA's office did not "remove

itself" from the proceedings.

The hearing continued:

> [THE COURT]: [ADA], your own words say that the [DA's] Office of Philadelphia is not going to participate in [the revocation] hearing unless and until [Appellee's] open case has been resolved. That means, sir, in English that the [DA's] Office has effectively removed themselves from representing the Commonwealth of Pennsylvania within the revocation hearing.
>
> No. You will wait. Because you stated this position on a number of occasions, sir. And unless the [DA's] Office reconsiders its contemptuous behavior which has disrupted the flow of this courtroom by indicating its willingness to participate as it normally would in the revocation hearing involving [Appellee], I would consider quite clearly removing [the court-appointed special prosecutor] because then there would be no need for a special prosecutor.
>
> If however, the [DA's] position remains that the [DA's] Office of Philadelphia or representatives therein will not participate in that revocation hearing, you know, there's only so far I can go.
>
> So which direction would you like to go, sir?
>
> [THE COMMONWEALTH]: First of all, I would respectfully like to clarify our position that you don't have the authority to order us to go forward with that at this time under the circumstances of this case. Respectfully, we disagree about that. We have not removed ourselves from the case. We have elected to proceed with the violation of probation hearing if and when a court of law after a trial demonstrates that this individual has done something that places him in violation of your probation. So that's why I keep attempting to interrupt. Because from our perspective—
>
> [THE COURT]: However you phrase that, sir, what that means, sir, is that you will dictate to this court how to conduct business. And you have impinged upon and violated the authority of this court because of your opinion that this court does not have the authority. That opinion

- 13 -

has no foundation in the law. That opinion and position violates the order of court. It has intentionally done so. It has disrupted this court's authority. And this court is left with no other method of resolving the matter to provide [Appellee] a full and fair hearing. Someone has to be in that chair at the revocation hearing whether you like it or not.

Sir, this is my lane of authority. It is not the DA's lane of authority. The DA has no authority, whatsoever, to dictate to this court how to do its job. And I am well within the parameters of my authority under the case law and the statute that reflects the manner in which revocation hearings are to proceed.

I'm sorry the [DA] does not like the law as it exists. My suggestion is if you don't like the law as it exists, talk to your legislature. It is the job of the [DA] to enforce the law as it exists and represent the interests of the Commonwealth of Pennsylvania. Not the law that he wishes it to be. It is not as you state.

(N.T. Hearing, 9/27/18, at 36-39; R. R. at 76a-77a).

Defense counsel joined the Commonwealth's motion to reconsider and alleged, *inter alia*: (1) the court denied Appellee his right to due process by requiring the parties to proceed immediately to a revocation hearing before defense counsel had adequate time to review discovery concerning the new charges or review the preliminary hearing notes of testimony; (2) Appellee would be unable to call his co-defendant in the case involving the new charges as a witness at the revocation proceeding while the new charges were still open against the co-defendant, due to Fifth Amendment concerns; (3) if defense counsel prevailed on a motion to suppress, then any evidence seized from the vehicle Appellee was driving would be inadmissible in the revocation proceedings; and (4) the court lacked authority to appoint a special

prosecutor, particularly the court-appointed special prosecutor, who is a criminal defense attorney.

Following the hearing, the court formally denied the motion for reconsideration but granted the Commonwealth's motion to stay the proceedings pending appeal. On October 3, 2018, the court-appointed special prosecutor filed a motion to substitute counsel, claiming he is a criminal defense attorney and cannot act as a special prosecutor while representing criminal defendants. The court did not rule on that motion due to the stay of proceedings. On October 9, 2018, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which the Commonwealth timely filed on October 26, 2018.

The Commonwealth raises the following issue on appeal:

> DID THE [TRIAL] COURT EXCEED ITS AUTHORITY WHEN IT APPOINTED A SPECIAL PROSECUTOR AFTER A REPRESENTATIVE OF THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE INFORMED THE COURT THAT— CONSISTENT WITH PENNSYLVANIA SUPREME COURT PRECEDENT—THE OFFICE INTENDED TO WAIT UNTIL THE RESOLUTION OF [APPELLEE'S] OUTSTANDING CRIMINAL CHARGES BEFORE PETITIONING FOR THE REVOCATION OF HIS PROBATION?

(The Commonwealth's Brief at 3).

The Commonwealth argues the trial court lacked statutory authority to replace the DA in this case. The Commonwealth asserts the DA is an executive branch of government, charged with the responsibility of conducting all criminal and other prosecutions on behalf of the Commonwealth. When a DA

- 15 -

is in contempt of court or has a conflict of interest, the Commonwealth claims the trial judge must act in accordance with the Independent Counsel Act and ask the President Judge of the Court of Common Pleas to request a Special Independent Prosecutor's Panel to appoint a special investigative counsel. If the DA's decision not to prosecute a case amounts to an abuse of discretion, the Commonwealth maintains the Commonwealth Attorneys Act also permits the trial judge to ask the President Judge of the Court of Common Pleas to petition the Attorney General to intervene. The Commonwealth insists the trial judge in this case failed to follow either procedure required to remove the DA from this case. The Commonwealth emphasizes the trial judge in this case is not the President Judge of the Philadelphia Court of Common Pleas and did not act through the President Judge or seek the intervention of a Special Independent Prosecutor's Panel or the Attorney General. The Commonwealth stresses the trial court had no authority to bypass the statutory requirements for replacing a DA and simply appoint a criminal defense attorney of the court's own choosing as special prosecutor.

Even if the trial court had statutory authority to remove the DA, the Commonwealth contends the trial court lacked justification to take that action where the Commonwealth followed the Pennsylvania Supreme Court's preference to defer revocation proceedings until after disposition of new charges. The Commonwealth avers the trial court disregarded the notion of "prosecutorial discretion" in favor of the court's preference to go forward with

revocation before disposition of the new charges. The Commonwealth further disagrees with the trial court's characterization of the Commonwealth's behavior as "contemptuous." Rather, the Commonwealth affirms it acted in accordance with its internal policy and Pennsylvania Supreme Court precedent, and intends to go forward with revocation proceedings if Appellee is convicted of the new charges. The Commonwealth also suggests deferring the revocation proceedings did not threaten public safety because Appellee was already incarcerated pending trial on the new charges. The Commonwealth concludes the trial court's removal of the DA and appointment of a special prosecutor was improper, and this Court must reverse.

As a preliminary matter, the issue on appeal presents a question of jurisdiction, which this Court may raise *sua sponte*. ***Commonwealth v. Valentine***, 928 A.2d 346 (Pa.Super. 2007). The Supreme Court of Pennsylvania has exclusive jurisdiction over the following types of cases:

### § 722. Direct appeals from courts of common pleas

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

(1) Matters prescribed by general rule.

(2) The right to public office.

(3) Matters where the qualifications, tenure or right to serve, or the manner of service, of any member of the judiciary is drawn in question.

(4) Automatic review of sentences as provided by 42 Pa.C.S. §§ 9546(d) (relating to relief and order) and

- 17 -

9711(h) (relating to review of death sentence).

(5) **Supersession of a district attorney by an Attorney General or by a court** or where the matter relates to the convening, supervision, administration, operation or discharge of an investigating grand jury or otherwise directly affects such a grand jury or any investigation conducted by it.

(6) Matters where the right or power of the Commonwealth or any political subdivision to create or issue indebtedness is drawn in direct question.

(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

(8) Matters where the right to practice law is drawn in direct question.

42 Pa.C.S.A. § 722 (emphasis added).

Additionally, Pennsylvania Rule of Appellate Procedure 3331(a)(1), governing the business of the Supreme Court, provides:

**Rule 3331.    Review of Special Prosecutions or Investigations**

**(a)    General rule.**  Within the time specified in Rule 1512(b)(3) (special provisions), any of the following orders shall be subject to review pursuant to Chapter 15 (judicial review of governmental determinations):

(1)    An order relating to the supersession of a district attorney by an Attorney General or by a court, or to the appointment, supervision, administration or operation of a special prosecutor.

Pa.R.A.P. 3331(a)(1).  Significantly, Rule 3331 "affords an explicit procedural

avenue for challenging the appointment of a special prosecutor. This rule was designed to provide a simple and expeditious method for Supreme Court supervision of special prosecutions and investigations…." ***In re Thirty-Fifth Statewide Investigating Grand Jury***, 631 Pa. 383, 391, 112 A.3d 624, 629 (2015) (internal citations and quotation marks omitted). "The [Supreme] Court, accordingly, has treated its review orders within the scope of Rule 3331—including those appointing special prosecutors—as a matter resting within its supervisory prerogative." ***Id.*** (clarifying that Rules of Appellate Procedure provide appropriate mechanics for contesting appointment, supervision, administration, or operation of special prosecutor; additionally, as practical matter, timely challenge under Rule 3331 may be only viable method for attacking effect of such appointments).

"All petitions for review under Rule 3331 (review of special prosecutions or investigations) **shall** be filed in the Supreme Court." Pa.R.A.P. 702(c) (emphasis added). "[T]he jurisdiction described in [Rule 702] Subdivision (c) extends…to interlocutory orders." Pa.R.A.P. 702, *Note*. A petition for review under Rule 3331 "shall be filed within ten days after the entry of the order sought to be reviewed." Pa.R.A.P. 1512(b)(3).

Further, under Pennsylvania Rule of Appellate Procedure 751:

**Rule 751.  Transfer of Erroneously Filed Cases**

**(a)  General rule.** If an appeal or other matter is taken to or brought in a court or magisterial district which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such

- 19 -

appeal or dismiss the matter, but shall transfer the record thereof to the proper court of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in transferee court on the date first filed in a court or magisterial district.

**(b) Transfers by prothonotaries.** An appeal or other matter may be transferred from a court to another court under this rule by order of court or by order of the prothonotary of any appellate court affected.

Pa.R.A.P. 751. **See also** 42 Pa.C.S.A. § 5103(a) (stating matter that is within exclusive jurisdiction of court or magisterial district judge of this Commonwealth but is commenced in any other tribunal of this Commonwealth shall be transferred by other tribunal to proper court or magisterial district of this Commonwealth where it shall be treated as if originally filed in transferee court or magisterial district of this Commonwealth on date when first filed in other tribunal). In other words, "[w]here an appeal within the exclusive jurisdiction of a tribunal is mistakenly filed in the wrong court, the proper course is to transfer the appeal to the correct judicial body." **Commonwealth v. Herman**, 143 A.3d 392, 394 (Pa.Super. 2016) (relinquishing jurisdiction and transferring appeal to Supreme Court where Supreme Court had exclusive jurisdiction of matter under 42 Pa.C.S.A. § 722).

Instantly, the record confirms the trial court actively removed the DA from this case and appointed a special prosecutor. Throughout the proceedings, the trial court isolated certain statements from different ADAs to support the court's position that the DA "removed itself" from the proceedings. As well, in its Rule 1925(a) opinion, the trial court repeatedly denied removing

the DA, classifying the DA's actions as, *inter alia*, an "abdication of representation responsibility," "surrender[ing]" of legal representation, "withdrawing or withholding legal representation," "admitted [withdrawal] of representation," "refusing to represent the legitimate interests of the Commonwealth," and "obstructionist abdication of sworn duty." (Trial Court Opinion, filed December 31, 2018, at 1, 7, 10, 22, 25, 26, 28, 36). When viewed in their entirety, however, the transcripts from the multiple hearings in this case make clear the trial court removed the DA because the DA's policy to defer conducting the revocation hearing until after disposition of Appellee's new charges interfered with the court's calendar.

On September 19, 2018, the date the court removed the DA and appointed a special prosecutor, the Commonwealth filed a notice of appeal in this Court. In its notice of appeal, the Commonwealth cited Rule 3331(a) as the basis for this Court's jurisdiction.[3] Nevertheless, the Supreme Court has **exclusive** jurisdiction over this case because it involves the supersession of a DA by the trial court. **See** 42 Pa.C.S.A. § 722(5). Consequently, the Commonwealth was **required** to file a petition for review in the Supreme Court pursuant to Rule 3331(a), within ten days of the court's order. **See** Pa.R.A.P. 702(c); 1512(b)(3); 3331(a)(1). The interlocutory nature of the court's order did not change the Commonwealth's responsibility in this regard.

_____

[3] Because Rule 3331(a) controls this matter, Pa.R.A.P. 311(d), governing Commonwealth interlocutory appeals in criminal cases, does not apply here.

*See* Pa.R.A.P. 702(c), *Note*. Filing a petition for review in the Supreme Court was the explicit procedural avenue for the Commonwealth to challenge the trial court's appointment of a special prosecutor.[4] *See In re Thirty-Fifth Statewide Investigating Grand Jury, supra*. Notwithstanding the Commonwealth's mistaken filing in this Court, we can transfer this case to the Supreme Court, as if it had been filed there on September 19, 2018, the same day as the trial court's order under review. *See* Pa.R.A.P. 751(a); 42 Pa.C.S.A. § 5103(a); *Herman, supra*. *See also* Pa.R.A.P. 1512(b)(3). Accordingly, we transfer this appeal to the Supreme Court of Pennsylvania.

Appeal transferred. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/16/19</u>

---

[4] In its opinion, the trial court suggests for the first time that its use of the term "special prosecutor" was a misnomer, and the court merely made a "limited appointment." In any event, the Supreme Court has exclusive jurisdiction over this case because it involves the supersession of a DA by the trial court. *See* 42 Pa.C.S.A. § 722(5); Pa.R.A.P. 3331(a)(1); Pa.R.A.P. 702(c). The case rightly belongs in the Supreme Court.