OPINION BY LAZARUS, J.:
Kathleen Granahan Kane appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, imposed following her conviction for perjury,[1] false swearing in an official proceeding,[2] obstructing the administration of law,[3] official oppression,[4] and criminal conspiracy.[5] After careful review, we affirm, in part, on the basis of the trial court's well-reasoned opinion.
This matter implicates constitutional issues, the rule of law, and a fundamental tenet underlying our legal system-the truth and sanctity of testimony under oath.[6]
*1222 In 2016, Montgomery County District Attorney Risa V. Ferman charged former Attorney General Kane with breaking the laws she swore to uphold. Kane denied that she committed any unlawful transgressions and denounced her accusers' allegations and the subsequent investigation into her wrongdoing as infringements upon her constitutional rights. On August 17, 2016, Kane resigned the Office of the Attorney General ("OAG").
Kane's charges stem from her indiscretions in an investigation of corruption allegations against Philadelphia politicians and her futile attempt to retaliate against a perceived political foe, former Deputy Attorney General ("DAG") Frank Fina, Esquire. The trial court ably chronicled the complex facts of Kane's case, and we hereby incorporate its recitation herein by reference. See Trial Court Opinion, 3/2/17, at 4-37. For context, we include a brief summary of the facts, which follows.
On March 16, 2014, the Philadelphia Inquirer ("Inquirer") published a story entitled "Kane shut down sting that snared [Philadelphia] officials."[7] The story detailed the OAG's three-year investigation of Philadelphia Democrats, including four members of the City of Philadelphia state house delegation,[8] and a little-known lobbyist, Tyron B. Ali. The story, which chronicled the Ali investigation led by then DAG Fina, detailed the OAG's decision to drop fraud charges against the investigation's targets, secretly, under seal in Fall 2013. Kane regarded the Inquirer story as an attack on her and the OAG's integrity, and she suspected that Attorney Fina leaked the story to the Inquirer as retaliation for opening an internal review into his handling of the Jerry Sandusky child sexual abuse investigation. Concerned that the Criminal History Record Information Act ("CHRIA") might prohibit the OAG from publicly discussing details of the Ali investigation, Kane obtained a judicial order giving her permission to discuss limited facts about the investigation in anticipation of press inquiries.
Only three days later, on March 19, 2014, Kane learned of a long-discontinued investigation into the alleged criminal activities of Jerome Mondesire, who led the Philadelphia branch of the NAACP for 17 years. Agent Michael Miletto and DAG William Davis worked with Attorney Fina on the Mondesire investigation, which began in 2008. At some point in 2009, DAG Davis sought Attorney Fina's permission to use an existing grand jury investigating a related matter to investigate Mondesire. DAG Davis prepared a legal memorandum summarizing the allegations against Mondesire ("Davis Memo"), which Attorney Fina later reviewed; the Davis Memo contained information learned from the aforementioned grand jury proceeding. DAG Davis and Attorney Fina memorialized correspondence discussing the Davis Memo in OAG emails, and Attorney Fina endorsed DAG Davis' findings. The OAG, however, never filed charges against Mondesire.
The OAG based its allegations against Mondesire on events that occurred as early *1223 as 2004, and thus, there was a consensus among several OAG agents and attorneys that any subsequent prosecution of Mondesire was likely time-barred. However, Kane still feared that revelation of the discontinued Mondesire investigation would appear unseemly in light of the March 16, 2014 Inquirer story, and on March 22, 2014, she instructed then DAG Bruce Beemer to interview Agent Miletto to learn why the Mondesire investigation was discontinued. DAG Beemer quickly formed the legal opinion that the allegations against Mondesire were likely time barred. The time and circumstances of DAG Beemer's meeting with Agent Miletto led him to conclude the purpose of the meeting was not to determine if the OAG could still prosecute Mondesire, but to ascertain whether incompetence or corruption lay at the root of Attorney Fina's decision not to prosecute.
Following Agent Miletto's meeting with DAG Beemer, an OAG agent demanded Agent Miletto provide yet another statement regarding the Mondesire investigation. The OAG agent audio recorded Agent Miletto's statement, over his objection, and an administrative assistant transcribed it in its entirety. The OAG agent delivered the sole copy of the Miletto transcript to Kane.
The same day, Kane arranged for First Assistant Attorney General Adrian King to deliver the Davis Memo, copies of emails between Attorney Fina and Agent Miletto regarding the Davis Memo, and the Miletto transcript, to a friend and political consultant, Joshua Morrow. Kane intended for Morrow to leak the documents to the press. Eventually, Morrow redacted the documents to obscure most named persons, except Attorney Fina, and delivered them to Christopher Brennan, a reporter for the Philadelphia Daily News ("Daily News").
On June 6, 2014, the Daily News published a story entitled "A.G. Kane examining '09 review of ousted NAACP leader's finances,"[9] which named Attorney Fina as the lead investigator. The Daily News story included content from the Miletto transcript and information derived from the grand jury investigation that uncovered the Mondesire allegations. Despite internal concern that the Daily News story was problematic and warranted an internal response, Kane declined to initiate an internal investigation or grand jury investigation to identify the source of the leak.
On May 8, 2014, Attorney Fina, then working as a Philadelphia Assistant District Attorney, contacted the Honorable William R. Carpenter, who was presiding over the Thirty-Fifth Statewide Grand Jury. Attorney Fina told Judge Carpenter that he received information that someone had leaked confidential grand jury information to the press and that he wished to share information relevant to the leak. Attorney Fina also suggested Judge Carpenter appoint a special prosecutor to investigate the leak. In spring 2014, Judge Carpenter determined that reasonable grounds existed to believe that an investigation was necessary to corroborate allegations that grand jury secrecy had been compromised, and appointed Thomas E. Carluccio, Esquire, to investigate and prosecute any illegal disclosures of grand jury matters.
Kane attempted to frustrate the grand jurying investigation by filing a quo warranto action[10] challenging: (1) Judge *1224 Carpenter's statutory authority to appoint Attorney Carluccio as Special Prosecutor for an investigating grand jury; and (2) whether the power to investigate and prosecute was reposed solely in the executive branch. Judge Carpenter denied Kane's quo warranto action by court order dated May 29, 2014. Our Supreme Court affirmed Judge Carpenter's order denying Kane quo warranto relief on March 31, 2015. In re Thirty-Fifth Statewide Investigating Grand Jury , 631 Pa. 383, 112 A.3d 624, 637 (2015) (supervising judge of grand jury has inherent authority to appoint special prosecutor where there are colorable allegations that sanctity of grand jury has been breached by attorney for Commonwealth and that allegations warrant investigation). See also In re Dauphin County Fourth Investigating Grand Jury , 610 Pa. 296, 19 A.3d 491, 503-504 (2011) (when colorable allegations or indications that sanctity of grand jury process has been breached and those allegations warrant investigation, appointment of special prosecutor to conduct such investigation is appropriate).
In August 2014, in the midst of Special Prosecutor Carluccio's probe, Kane met with Morrow to discuss the grand jury investigation into the Mondesire leak. Morrow assured Kane that if subpoenaed by the grand jury, he would testify that he leaked the documents to the Daily News on his own initiative, and not at Kane's direction. Kane and Morrow met again in October 2014, at which time Morrow reiterated this assurance.
On November 17, 2014, Kane testified before the Thirty-Fifth Statewide Investigating Grand Jury. Kane falsely denied, numerous times, having facilitated the leak of the Mondesire investigation to the Daily News. Kane also denied knowing whether the June 6, 2014 Daily News Mondesire story was in any way related to or a response to the March 16, 2014 Inquirer story chronicling the Ali investigation. When shown the Davis Memo and accompanying documents, Kane denied having ever seen them before and denied having discussed the Mondesire investigation with Morrow. Kane also stated she had not sworn an oath of secrecy regarding the grand jury investigation that uncovered the Mondesire allegations. In response, the Commonwealth produced, among other evidence, a copy of the notarized secrecy oath she signed on her first day in office, regarding the first through thirty-second statewide investigative grand juries, including the Mondesire grand jury.
On December 19, 2014, the Thirty-Fifth Statewide Investigating Grand Jury issued a presentment recommending that the Commonwealth charge Kane with perjury, false swearing, abuse of office/official oppression, obstructing the administration of law or other governmental function, and contempt of court. The same day, Judge Carpenter, by court order, accepted the presentment. On August 6, 2015, following an investigation conducted by the Montgomery County District Attorney's Office, then-District Attorney Ferman filed a criminal complaint charging Kane with perjury, false swearing, two counts of obstructing administration of law or other governmental functions, additional counts of perjury, and two counts of criminal conspiracy. On October 1, 2015, District Attorney Ferman filed additional counts of perjury, false swearing, and obstructing administration of law or other governmental function.[11]
Following a seven-day trial, a jury found Kane guilty of all counts. On October 24, 2016, the Honorable Wendy Demchick-Alloy sentenced Kane to an aggregate sentence *1225 of 10 to 23 months' incarceration followed by eight years' probation. This timely appeal followed. Both Kane and the trial court have complied with Pa.R.A.P. 1925. On appeal, Kane raises the following issues for our review:
1. Whether the lower court erred in denying [Kane's] motion asking that all judges on the Montgomery Court of Common Pleas be recused from participation in her case.
2. Whether the lower court erred in denying the motion filed by [Kane] to suppress testimony and other evidence presented against her to the[T]hirty-[F]fth statewide investigating grand jury, and to quash the charges filed against her as recommended in the presentment of that grand jury since the challenged evidence was illegally and unconstitutionally obtained.
3. Whether the lower court erred in limiting [Kane's] right to present a defense when it granted the Commonwealth's motion in limine to exclude any reference at trial to pornography found in the office of attorney general [OAG] emails of former OAG attorneys Frank Fina and Marc Costanzo, and when, in sustaining a Commonwealth objection to the defense opening address to the jury, it precluded reliance by the defense upon "other issues involving other cases[.]"
4. Whether the lower court erred in denying [Kane's] motion to quash for selective and vindictive prosecution.
5. Whether the lower court erred in denying [ ] Kane's request that the jury in her case be instructed that grand jury secrecy applies only to matters actually occurring before the grand jury.
Brief of Appellant, at 1-3.
Kane first claims that the trial court erred in denying her motion to recuse all judges of the Montgomery Court of Common Pleas. Specifically, Kane argues that three judges of the Montgomery County Court of Common Pleas[12] had significant connections with the investigation and prosecution of her case, which constituted conflicts, and that the trial court should have imputed said conflicts to all of the judges sitting on the Montgomery County Court of Common Pleas.
As a general rule, when circumstances arise during the course of trial raising questions of the trial judge's bias or impartiality, it is the duty of the party, who asserts that a judge should be disqualified, to allege by petition the bias, prejudice, or unfairness necessitating recusal. Commonwealth v. Perry , 551 A.2d 1080, 1082 (Pa. Super. 1988) (citations omitted).
There is a presumption that judges of this Commonwealth are "honorable, fair and competent," In re Lokuta , [608 Pa. 223] 11 A.3d [427, 453 (Pa. 2011) ] (citation omitted), and, when confronted with a recusal demand, are able to determine whether they can rule "in an impartial manner, free of personal bias or interest in the outcome." Arnold v. Arnold , 847 A.2d 674, 680 (Pa. Super. 2004) (citation omitted). If the judge determines he or she can be impartial, "the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist *1226 can make." Id. at 680-81 (citation omitted). A judge's decision to deny a recusal motion will not be disturbed absent an abuse of discretion . See In re Lokuta , 11 A.3d at 435.
Lomas v. Kravitz , 130 A.3d 107, 122 (Pa. Super. 2015), aff'd --- Pa. ----, 170 A.3d 380 (2017) (emphasis added). Furthermore, our Supreme Court has held that it
would be an unworkable rule[,] which demanded that a trial judge recuse whenever an acquaintance was a party to or had an interest in the controversy. Such a rule ignores that judges throughout the Commonwealth know and are known by many people, ... and assumes that no judge can remain impartial when presiding in such a case.
Id. at 122-23. "There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings." Id. at 144.
Kane baldly asserts that Judges Carpenter, Ferman, and Carluccio were intimately familiar with the facts of her case presented to the grand jury, believed she was guilty, and thus, developed a bias against her that they collectively imputed to Judge Demchick-Alloy and the other judges sitting on the Montgomery Court of Common Pleas. The trial court determined that Kane's failure to cite to any authority supporting her argument that the trial court should impute the alleged bias of Judges Carpenter, Ferman, and Carluccio to the other judges sitting on the Montgomery County Court of Common Pleas strongly suggested her argument was without merit. We agree.
The mere fact that some judges of a particular court may have some familiarity with a particular case has not been held to be a basis for recusal of an entire bench of judges. There is no evidence of record that the majority of judges of the Montgomery Court of Common Pleas have a relationship with Judge Demchik-Alloy or Special Prosecutor Carluccio. Nor is there any evidence that Judges Carluccio or Ferman were involved in this matter or that Judge Carpenter wielded special influence over Special Prosecutor Carluccio. Without some evidentiary showing of an interest, Kane's allegations merit no relief.
Kane's argument that "the involvement of one judge in a grand jury proceeding disqualifies the rest of the bench from presiding over the resulting charges" is also meritless. Trial Court Opinion, 3/22/17, at 44. The standard of proof of a crime necessary to support a presentment or indictment by a grand jury is much lower than that necessary to support a verdict of guilty at trial. See Commonwealth v. Weston , 561 Pa. 199, 749 A.2d 458, 461 (2000). Generally, judges understand the evidence presented to a grand jury that supports an indictment may not be sufficient to establish guilt at trial; thus, it is not necessary to impute bias to them. Accordingly, the trial court did not err in denying Kane's motion to recuse all of the judges of the Montgomery County Court of Common Pleas.
Kane next claims that the trial court erred in denying her motions to suppress evidence gathered by the grand jury and failing to quash the charges filed against her. Kane avers that Special Prosecutor Carluccio's use of the grand jury was unauthorized by statute, rule, or judicial precedent and the separation of powers doctrine prohibited it.
Kane first avers that the trial court erred in not suppressing evidence gathered during the course of Special Prosecutor Carluccio's investigation. In support of Kane's claim, she cites In re The Thirty-Fifth Statewide Investigating Grand Jury , supra , in which five of our Supreme Court's Justices filed four opinions in the disposition of her aforementioned quo warranto action.
*1227 A decision of [our Supreme Court] has binding effect if a majority of the participating Justices joined the opinion. Commonwealth v. Holmes , 621 Pa. 595, 79 A.3d 562, n. 8 (2013) (citation omitted).
In order to reconcile precedent out of a fragmented decision,
a majority of the Court must be in agreement on the concept which is to be deemed the holding. It is certainly permissible to find that a Justice's opinion which stands for the "narrowest grounds" is precedential, but only where those "narrowest grounds" are a sub-set of ideas expressed by a majority of other members of the Court. The mere finding that one Justice expressed a narrower belief than others does not dispense with the requirement that a majority of the Court need agree on a concept before that concept can be treated as binding precedent.
Pap's A.M. v. City of Erie , 553 Pa. 348, 719 A.2d 273, 278 (1998).
Our Supreme Court's holding In re The Thirty-Fifth Statewide Investigative Grand Jury contradicts Kane's position that Special Prosecutor Carluccio's use of the grand jury was unauthorized by judicial precedent. Accordingly, Kane's claim is meritless.
In In re The Thirty-Fifth Statewide Investigative Grand Jury , our Supreme Court specifically determined that Judge Carpenter did not exceed the powers lawfully vested in his judicial office to grant Special Prosecutor Carluccio the authority to compel testimony and production of documents and to issue a report on his findings based on that evidence. This is the law of the case, and as such, our Supreme Court's finding in In re The Thirty-Fifth Statewide Investigative Grand Jury is final and binding on this Court. Therefore, Kane's argument is meritless. Furthermore, Kane's citation to In re The Thirty-Fifth Statewide Investigative Grand Jury is inapposite to the argument presented in her motion to suppress evidence and is of no support to her position.
Kane next argues that the trial court improperly denied her motion to quash charges because the grand jury investigation was unlawful and unconstitutional. "A motion to quash a criminal information or indictment is [addressed] within the sound discretion of the trial judge[.]" Commonwealth v. Lebron , 765 A.2d 293, 294 (Pa. Super. 2000) (quotation omitted). "Discretion is abused when the course pursued by the trial court represents not merely an error in judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." Id. at 294-95 (citation omitted).
Additionally, we note:
A motion to quash is an appropriate means for raising defects apparent on the face of the information or other defects which would prevent prosecution. It is neither a guilt determining procedure nor a pre-trial means for determining the sufficiency of the Commonwealth's evidence. Neither the adequacy nor competency of the Commonwealth's evidence can be tested by a motion to quash the information.
Commonwealth v. Finley , 860 A.2d 132, 135 (Pa. Super. 2004), quoting Commonwealth v. Shaffer , 384 Pa.Super. 182, 557 A.2d 1106, 1106-1107 (1989).
Again, our Supreme Court's decision in In re The Thirty-Fifth Statewide Investigative Grand Jury belies Kane's claim that Special Prosecutor Carluccio's investigation was unlawful and violated Kane's constitutional rights. The basis for Kane's motion for quashal is that Mr. Carluccio lacked lawful authority to obtain the presentment that led the district attorney to file the charges in these actions. However, *1228 to warrant quashal, appellant would have to demonstrate that no other alternative would be adequate to vindicate her rights. The matter of In re Thirty-fifth Statewide Investigating Grand Jury is again instructive. Despite there being various opinions by the various Justices of the Court, collectively, they do not establish that Kane has a right to any form of relief, assuming arguendo that Mr. Carluccio lacked lawful authority to draft and issue a presentment. The Chief Justice and Justice Eakin expressly concluded that the judiciary has an implied power to authorize an appointee to issue a presentment. Justices Todd and Stevens were somewhat less authoritative on this issue. Justice Baer was willing to assume, without deciding, that such proceedings violated appellant's due process of law rights but he concurred in the judgment denying relief because he concluded that any infringements of appellant's rights would be "rendered harmless" as long as appellant's right to due process of law was honored in the proceedings following the filing of charges. Therefore, a majority of the justices deciding this issue determined that no relief was due appellant since either there was authority to draft and issue a presentment or at worst, the lack of authority was rendered harmless by the factual circumstances in this specific case, by the proceedings which followed the presentment and charges.[13] Judge Demchick-Alloy did not abuse her discretion in denying Kane's motion to quash all charges. This argument is meritless.
Fourth, Kane argues, for a plethora of specious reasons, that the trial court erred in not permitting her to introduce evidence of pornographic emails and the Jerry Sandusky case. Kane claims that the trial court erred when it granted the Commonwealth's motions in limine to prohibit any reference at trial to pornography discovered in the OAG emails of Former Assistant Attorney Generals Frank Fina, Esquire, and Marc Costanzo, Esquire.[14] Kane also argues that the trial court prohibited her from introducing evidence material to her defense when it sustained the Commonwealth's objection to her discussion of Attorney Fina's investigation of crimes related to child abuse by Jerry Sandusky.
"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury[.]" Pa.R.E. 403.
" '[U]nfair prejudice' means 'a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.' " Castellani v. Scranton Times, L.P. , 633 Pa. 230, 124 A.3d 1229, 1245 (2015), citing Pa.R.E. 403 (comment). Furthermore,
*1229 [c]ourts may properly restrict counsel, in opening, by refusing to permit questionable features of evidence to be referred to, holding counsel to a narrative of the defense, reserving further consideration of the matter until it is offered in evidence. The court may then determine its admissibility, and, if it may be received, no harm is done to the accused in refusing to permit reference to be made to it in the opening, as the jury later will be fully aware of the facts.
Commonwealth v. Quaranta , 295 Pa. 264, 145 A. 89, 91 (1928).
Our standard of review in reviewing the grant of a motion in limine is well settled:
When reviewing the denial of a motion in limine , we apply an evidentiary abuse of discretion standard of review. See Commonwealth v. Zugay , 745 A.2d 639 (Pa. [Super.] 2000) (explaining that because a motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to ruling on a motion to suppress evidence, our standard of review of a motion in limine is the same of that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.
Commonwealth v. Stokes , 78 A.3d 644, 654 (Pa. Super. 2013) (some citations omitted).
Regarding evidence of the Sandusky investigation, Kane's review of Attorney Fina's handling of the Sandusky case began in August 2013, well before the Inquirer story. Therefore, the trial court and jury could infer revenge was not the motivation for Kane's review. The trial court also concluded that Kane's attempt to introduce evidence of pornographic emails sent or received from Attorney Fina's OAG email account was primarily to obfuscate legal and evidentiary issues, mislead the jury, and suggest a "decision on an improper basis[.]" Trial Court Opinion, 3/2/17, at 97, citing Castellani , 124 A.3d at 1245. We are inclined to agree.
The trial court properly concluded that: (1) the probative value of evidence of pornographic materials discovered in Attorney Fina's and Attorney Costanzo's OAG email accounts was speculative and inadmissible, and thus, the trial court properly barred Kane from discussing it during her opening argument; and (2) evidence of the Sandusky investigation was irrelevant to Kane's defense. Accordingly, Kane's fourth claim on appeal is meritless.
Kane next claims that the trial court erred in denying her motion to quash the charges filed against her "based upon the selective and vindictive nature of the prosecution." Brief of Appellant, at 52. Preliminarily, we note that Kane has conflated the two very distinct concepts of selective and vindictive prosecution.
A vindictive prosecution claim is not a defense on the merits and not a matter for presentation to the jury. Commonwealth v. Stetler , 95 A.3d 864, 892 (Pa. Super. 2014). A presumption of prosecutorial vindictiveness arises if a defendant establishes facts that demonstrate a probability that an adverse action by the prosecution or court has been motivated by vindictiveness in retaliation for successful exercise of a defendant's legal rights rather than for some other legitimate cause. Commonwealth v. Rocco , 375 Pa.Super. 330, 544 A.2d 496, 498 (1988). The key to whether a presumption of vindictiveness arises in a given case would be the factual circumstance in which the challenged action occurred. Id. However, "due process does not forbid enhanced sentence or charges; rather, only enhancement motivated by actual vindictiveness toward the defendant for having exercised his [or her] legal rights is forbidden." Id. at 499. A pre-trial decision to enhance sentence or *1230 charges "is less likely to be improperly motivated than a decision made after trial." Commonwealth v. Chamberlain , 612 Pa. 107, 30 A.3d 381, 419 (2011).
On the other hand, selective prosecution is a complete defense to a charge of criminal conduct, in which the accused bears the burden of pleading the existence of the elements of the events. See Goodman v. Kennedy , 459 Pa. 313, 329 A.2d 224, 232 (1974) ("A purposeful discrimination must be shown [by the defendant] and we cannot presume such discrimination.").
In order to establish a prima facie case of selective prosecution, [an a]ppellant must establish, first, that others similarly situated were not prosecuted for similar conduct, and, second, that the Commonwealth's discriminatory prosecutorial selection was based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification. The burden is on the defense to establish the claim; it is error to shift the burden to the prosecution to establish or refute the claim. Because of the doctrine of separation of power, the courts will not lightly interfere with an executive's decision of whom to prosecute.
Commonwealth v. Murphy , 795 A.2d 997, 1000 (Pa. Super. 2002) (internal citations omitted).
Instantly, the facts of record do not support Kane's claim of vindictive prosecution. The prosecutors in Kane's case made no changes to the charges initially filed against her until after the execution of a search warrant unveiled new facts that warranted the filling of additional charges. Nor has Kane pled facts proving either of the elements necessary to establish a claim of selective prosecution. Kane has not shown that others similarly situated were not prosecuted for similar conduct, nor has she provided evidence of impermissible conduct by the Montgomery County District Attorney's Office. Therefore, Kane's claim that the Commonwealth vindictively and/or selectively prosecuted her for the foregoing charges is meritless and no relief is due.
Next, Kane claims that the trial court erred in not delivering her requested jury instruction.[15] Specifically, Kane objected to the court's instructions to the jury as to what constitutes grand jury information and that not all information relating to grand jury proceedings is secret. Kane's jury instruction claim pertains to Judge Demchick-Alloy's jury instruction regarding obstructing administration of law or other governmental function. See N.T. Trial, 8/15/16, at 204-208.[16]
Our standard of review in assessing a trial court's jury instructions is as follows:
*1231 It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the entire charge as [a] whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. An instruction will be upheld if it clearly, adequately and accurately reflects the law. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law.
Commonwealth v. Barnett , 121 A.3d 534, 545 (Pa. Super. 2015) (emphasis added), quoting Commonwealth v. Cook , 597 Pa. 572, 952 A.2d 594, 626-27 (2008). There is error in jury instructions only when the trial court abuses its discretion and inaccurately states the law. Commonwealth v. Williams , 602 Pa. 360, 980 A.2d 510, 523 (2009).
Instantly, the trial court correctly determined that Kane's proposed jury instruction implied that she could have legally disclosed grand jury information that the law forbade her from publishing. Therefore, the trial court properly concluded that "[i]nstructions to the jury are to be fair and accurate; they are not required to embody points that a party more properly should make in argument." Trial Court Opinion, 3/2/17, at 102, quoting Commonwealth v. Lesko , 609 Pa. 128, 15 A.3d 345, 397 (2011). We discern no abuse of discretion or error of law in the trial court's decision to refuse a legally incorrect charge to the jury.
Based on our review of the parties' briefs, the relevant case law and the certified record on appeal, we dispose of all five of Kane's claims based on the Honorable Wendy Demchick-Alloy's opinion. We direct the parties to attach a copy of that decision in the event of further proceedings in the matter.
Judgment of sentence affirmed.
ATTACHMENT
*1232 *1233 *1234 *1235 *1236 *1237 *1238 *1239 *1240 *1241 *1242 *1243 *1244 *1245 *1246 *1247 *1248 *1249 *1250 *1251 *1252 *1253 *1254 *1255 *1256 *1257 *1258 *1259 *1260 *1261 *1262 *1263 *1264 *1265 *1266 *1267 *1268 *1269 *1270 *1271 *1272 *1273 *1274 *1275 *1276 *1277 *1278 *1279 *1280 *1281 *1282 *1283 *1284 *1285 *1286 *1287 --------

18 Pa.C.S.A. § 4902.

18 Pa.C.S.A. § 4903.

18 Pa.C.S.A. § 5101.

18 Pa.C.S.A. § 5301.

18 Pa.C.S.A. § 903.

The secrecy of grand jury proceedings is indispensable to the effective functioning of a grand jury. In re Dauphin County Fourth Investigating Grand Jury , 610 Pa. 296, 19 A.3d 491, 502-503 (2011).

Philadelphia Inquirer, Kane shut down sting that snared Phila. officials , March 16, 2014, http://www.philly.com/philly/news/20140316_Kane_shut_down_sting_that_snared_Phila__officials.html (last accessed May 6, 2018).

The OAG ran a three-year undercover sting operation that captured Philadelphia Democrats, including four members of the Pennsylvania House of Representatives, on tape accepting money. At the time of the publication of the March 16, 2014 Inquirer story, the OAG had not brought charges against any of the individuals implicated in the investigation. Kane shut down sting that snared Phila. Officials , supra .

Christopher Brennan, Probing a Probe: A.G. Kane examining '09 review of ousted NAACP leader's finances , Phila. Daily News, June 6, 2014, at 3.

A writ of quo warranto is a means by which to test title or right to public office. Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia , 607 Pa. 104, 4 A.3d 610, 627 (2010).

The Montgomery County District Attorney filed the foregoing charges following the execution of a search warrant that uncovered additional evidence.

In her brief, Kane identifies Judge Carpenter, the Honorable Risa Vetri Ferman (formerly the Montgomery County District Attorney), and the Honorable Carolyn T. Carluccio (spouse of Special Prosecutor Carluccio) as the judges she claims have connections to the investigation and prosecution of the instant case.

We note that many of the issues raised by the appellant would be rendered moot if there were statutory direction, or revised rules, with regards to practice and procedure before a statewide grand jury. Since that is not yet the case in Pennsylvania, we are left to glean our response to appellant's appeal by parsing together the various opinions provided by our Supreme Court. We agree with the trial court's analysis of the various opinions stated and conclude, as she does, that no relief is either due or available to appellant.

On July 28, 2016, the Commonwealth filed a motion in limine to exclude evidence of selective and vindictive prosecution, which the trial court granted by order dated July 28, 2016. Judge Carpenter's order barred Kane from producing at trial evidence of pornographic email messages.

Kane's proposed jury instruction was as follows:
In case number 6239-2015, count 8, the Commonwealth has charged that the defendant impeded Mr. Mondesire in the exercise of his right to reputation by directing the release of secret Grand Jury information, in violation of the Grand Jury Act. In that regard, I instruct you that not all information relating to grand jury proceedings is secret. Grand Jury secrecy applies only to prevent the unauthorized disclosure of matters occurring before the grand jury, such as the testimony of grand jury witnesses or other matters that took place within the secret confines of the Grand Jury hearing room.
Brief of Appellant, at 65.

The trial court's jury instruction, in relevant part, was stated as follows:
[Kane] has been charged with obstructing a governmental function. To find the defendant guilty of this offense, you must find the following elements have been proven beyond a reasonable doubt[.] First element, that the defendant obstructed or impaired the administration of law or a government function.... [A] person cannot commit this crime unless he or she uses means that affirmatively interfere with governmental functions.... The second elements of obstruction is that the defendant did so by breach of official duty or an act otherwise in violation of the law.... The Commonwealth avers that [Kane] violated the Criminal History Records Information Act [ ("CHRIA") ].... Second, the Commonwealth alleges [Kane] violated the Investigating Grand Jury Act[.] ... Third, the Commonwealth alleges that [Kane] violated the law by testifying falsely before the grand jury.... The third element of obstruction is that the defendant did so intentionally[.]
N.T. Trial, 8/15/16, at 204-208.