J-S02035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYSHEED DAVIS | : | |
| | : | |
| Appellant | : | No. 1131 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008148-2016

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED: March 12, 2021**

Appellant Tysheed Davis appeals from the judgment of sentence imposed following his jury trial conviction of third-degree murder and related offenses. Specifically, he claims that the trial court erred when it failed to instruct the jury on involuntary manslaughter. We affirm.

We take the factual history in this matter from the trial court's opinion and our review of the certified record.

> In the afternoon of April 29, 2016, Jessie Williams got into the driver's side of his Jeep as his friend, Bryan Robinson, sat in the front passenger seat. Mr. Williams drove down Twenty-Third street in Philadelphia, turning onto Wharton Street and then onto Twenty-Second Street. Unbeknownst to Williams, [Appellant] was chasing him, gun drawn, running down the streets. The Jeep turned onto Latona Street. [Appellant], seeking an opportunity to cut Williams off, turned the block before, onto Titan, gun still drawn as he ran down the street. The Jeep passed [A]ppellant on Twenty-First Street and [Appellant] doubled back. Williams turned onto Wharton Street and stopped at the red light at the intersection of Wharton and Point Breeze Streets, where

[Appellant] ran into the street, aimed and fired his .380 caliber pistol into the Jeep multiple times. Williams, licensed to carry, returned fire, striking [Appellant's] gun and amazingly breaking off a part of the gun, together with the top of [Appellant's] trigger finger. But the damage had been done. Williams had been shot in the chest and the bullet travelled into his heart, causing his death. The Jeep crossed over Point Breeze and crashed at 2026 Wharton Street. Remark[ab]ly, the chase and gunfight were caught on several different security cameras in the area and those videos were collected by the police.

Trial Ct. Op., 6/30/20, at 3 (record citation omitted).

A four-day jury trial commenced on April 16, 2019. After the Commonwealth presented its case in chief, Appellant testified in his own defense. He stated that he chased Williams' Jeep in order to get his money back for an inoperable gun he had recently bought from Bryan Robinson. *See* N.T. Trial, 4/22/19, at 10-12. After catching up with the Jeep, he claimed that he approached and asked for his money back, at which time Williams started firing the gun at him. *See id.* at 14-16. Appellant asserted that he had no intention of shooting anybody, he had been running and laughing with the gun because he knew it did not work, and the gun unexpectedly fired during the incident. *See id.* at 18.

Appellant requested that the trial court give the jury both voluntary and involuntary manslaughter charges. After Appellant's testimony, the trial court stated: "As to your request, I think I have to give an involuntary. . . . I don't think you get voluntary, because there's two ways to do it, and you don't— your client's testimony does not fit into either one. But I think his testimony fits into involuntary." *Id.* at 49. Following the parties' closing arguments, the

trial court instructed the jury, including a charge concerning the "six possible verdicts that you might reach in this case: Not guilty or guilty of one of the following crimes: Murder in the first degree, murder in the third degree, and/or involuntary manslaughter."  N.T. Trial, 4/22/19, at 112-13.

Specifically, with respect to involuntary manslaughter, the court instructed the jury as follows:

> The defendant is charged with involuntary manslaughter.  The defendant commits involuntary manslaughter when he or she directly causes the death of another person by reckless or grossly negligent conduct.
>
> The defendant is charged with involuntary manslaughter.
>
> To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:
>
> Firsts, that Jessie Williams is dead.
>
> Second, that the defendant was a direct cause of his death.
>
> And, third, that the defendant's conduct was reckless or grossly negligent.  The terms "reckless" and "grossly negligent" mean the same thing.
>
> A defendant's conduct is reckless or grossly negligent when he's aware of and consciously disregards a substantial and unjustifiable risk that death will result from his conduct, the nature and degree of risk being such that it is grossly unreasonable for him to disregard.
>
> In deciding whether the defendant's conduct is reckless or grossly negligent, you should consider all the relevant facts and circumstance including the nature and intent of the defendant's conduct and the circumstances known to him.
>
> As the definitions I just gave you indicate, the reckless/gross negligence required for involuntary manslaughter is a great departure from the stared of ordinary care.  It is a departure that

shows a disregard for human life or indifference to the possible consequences of one's conduct.

Compared with the recklessness/gross negligence, the malice required for third-degree murder is a more blame-worthy state of mind. The essence of [] malice is an extreme indifference to the value of human life.

*Id.* at 118-20.

On April 23, 2019, the jury found Appellant guilty of third-degree murder, firearms not to be carried without a license, carrying a firearm in a public place, and possession of an instrument of crime.[1] Following the jury's verdict, Appellant pleaded guilty to possession of a firearm prohibited.[2]

On October 17, 2019, the trial court sentenced Appellant to an aggregate sentence of thirty and one-half to sixty-one years of imprisonment. The trial court denied Appellant's post-sentence motion on February 28, 2020.

Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive Rule 1925(a) opinion.

Appellant presents the following issue on appeal: "Was the [A]ppellant denied a fair trial because the trial judge declined to charge the jury, as requested, on the offense of involuntary manslaughter?" Appellant's Brief at 4.

Appellant claims that the trial court erred by denying his request for a jury instruction on involuntary manslaughter. He contends that the evidence

---

[1] *See* 18 Pa.C.S. §§ 2502(c), 6106(a)(1), 6108, and 907(a), respectively.

[2] *See* 18 Pa.C.S. § 6105(a)(1).

could reasonably support a conviction for involuntary manslaughter because the victim's death "resulted from serious negligence and/or serious recklessness." *Id.* at 14. Hence, he claims the trial court should have given the involuntary manslaughter charge to the jury.

We review a challenge to jury instructions for an abuse of discretion or an error of law. *See Commonwealth v. Galvin*, 985 A.2d 783, 798-99 (Pa. 2009). "It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the entire charge as [a] whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue." *Commonwealth v. Kane*, 188 A.3d 1217, 1231 (Pa. Super. 2018) (citation omitted). "There is error in jury instructions only when the trial court abuses its discretion and inaccurately states the law." *Id.* (citation omitted).

Here, a review of the record reveals that, contrary to Appellant's claim, the trial court concluded that an involuntary manslaughter instruction was appropriate and instructed the jury accordingly. *See* N.T. Trial, 4/22/19, at 49, 118-20; *see also Kane*, 188 A.3d at 1231. Therefore, Appellant's claim is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/21