J-S41007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHAYRIYYAH ADAMS | : | |
| | : | |
| Appellant | : | No. 2685 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 13, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006819-2022

BEFORE: BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 10, 2025**

Khayriyyah Adams appeals from the aggregate sentence of five to ten years in prison, followed by three years of supervision, arising from her convictions of involuntary deviate sexual intercourse ("IDSI"), sexual assault, and indecent assault. We affirm.

The trial court summarized the factual background of this matter thusly:

[The victim in this matter, S.H.,] testified that she was arrested in May of 2022. She was [seventeen] years old at the time. S.H was initially detained at a juvenile facility but was transported to an adult facility in June of 2022. While there, S.H. met [inmates] Appellant and co-defendant [Juliette] Williams. Appellant and Williams initially befriended S.H. but soon made sexual advances toward her. Over time, Appellant's advances toward S.H. became more physical and overtly sexual. S.H stated that Appellant would sometimes grab her by the neck and kiss her. When S.H. rejected Appellant's sexual advances, Williams threatened S.H. on Appellant's behalf.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On [June 22, 2022,] as S.H. walked past Appellant's cell on her way to the showers [during inmate recreation time], Appellant grabbed her and pulled her into the cell [that she shared with Williams]. According to S.H., Williams stood guard as Appellant pushed S.H. onto the bed and ripped open her jumpsuit. Appellant then reached under [Williams's] bed and produced an object, which she used to forcibly penetrate the complainant's vagina. [S.H. screamed during this portion of the encounter.] Appellant then forced S.H to perform oral sex on her. Williams remained outside of Appellant's cell as the assault unfolded and threatened S.H. afterward if she told anyone about the incident.

S.H. suffered vaginal bleeding as a result of the incident and eventually received medical attention. S.H. was reluctant to report the incident but told a juvenile caseworker what transpired [two days later,] after she was transported back to a juvenile facility[.]

Trial Court Opinion, 2/28/25, at 2-3.

Based on the above, the Commonwealth charged both Appellant and Williams with a litany of sexual offenses. This matter proceeded to a consolidated bench trial, which bore out the above facts, viewing the evidence in the light most favorable to the Commonwealth. Additionally, the prosecution admitted into evidence, over Appellant's objection, a photograph of a phallic-shaped object, described by the witnesses as a "dildo," assembled primarily from soap, gloves, and menstrual pads. The testimony confirmed that this item was found in Williams's cell in a different facility several weeks after the attack against S.H. It was not the same item used to penetrate the victim.

Neither Appellant nor Williams testified, though they vigorously cross-examined S.H. Among other things, S.H. was asked about the fact that she

- 2 -

was observed being intimate with Appellant in the days leading up to the attack; her delay of two days in reporting the assault; the details concerning how close the stationed corrections officer was to Appellant's cell during the encounter; how Appellant's jumpsuit and other clothing were positioned during the forced oral sex; the fact that S.H. screamed but did not otherwise resist in any way; and the seriousness of the crimes S.H. was facing while incarcerated, which included robbery and burglary.

At the conclusion of trial, the court found Appellant guilty of the above-referenced offenses, acquitting her of a number of other charges, including rape, stalking, and terroristic threats.[1] It later sentenced Appellant as indicated. Immediately following the sentencing hearing, Appellant learned that S.H. had, before trial, retained an attorney to prospectively file a civil suit against the jail facility where the assault took place. Appellant filed a timely post-sentence motion arguing that: (1) the verdicts were against the weight of the evidence; and (2) she was entitled to a new trial based on newly discovered evidence because she had no opportunity to cross-examine S.H. about her retention of counsel. The motion was denied following argument.

---

[1] The court likewise found Williams guilty of IDSI, sexual assault, and conspiracy to commit IDSI.

This timely appeal followed. The trial court ordered Appellant to submit a statement of errors pursuant to Pa.R.A.P. 1925(b),[2] and she complied. The court authored a responsive Rule 1925(a) opinion. Appellant raises four issues for our consideration:

1. Is the evidence legally sufficient to convict [Appellant] of all charges where the evidence offered to support the verdict of guilt in these matters is so unreliable and/or contradictory as to make the verdict based upon conjecture?

2. Is the verdict of guilty with respect to all charges against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice? [S.H.] only made accusations against Appellant after she was threatened[.]

3. Did the trial court commit legal error and/or abuse its discretion when it admitted into evidence an item similar to the item used to commit the criminal act where it is undisputed that the item admitted into evidence is not the item utilized in the crime?

4. Did the trial court commit legal error and/or abuse its discretion when it denied Appellant's request for a new trial based upon newly discovered evidence where that evidence is the fact that [S.H.] retained counsel to file a civil suit based upon the facts of the matter *sub judice*?

Appellant's brief at 9-10 (cleaned up).

_____

[2] We remind the trial court that all Rule 1925(b) orders must provide, *inter alia*, "the address to which the appellant can mail the Statement" and "that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) **shall** be deemed waived." Pa.R.A.P. 1925(b)(3)(iii-iv) (emphasis added).

In her first claim, Appellant attacks the sufficiency of the evidence supporting her convictions. *See* Appellant's brief at 21-29. We consider Appellant's position mindful of the following well-settled standard:

When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Roberts*, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up). Additionally, "we consider all of the evidence actually admitted at trial and do not review a diminished record." *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa.Super. 2011) (citation omitted).

Appellant does not raise a deficiency of the evidence as it relates to any particular crime or element of a crime. Rather, she contends that the evidence was insufficient because S.H.'s testimony was "so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture." *See* Appellant's brief at 23 (citing *Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993)).

As to this particular type of challenge, our High Court has elucidated:

> Traditionally[,] under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution.
>
> This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.

*Karkaria*, 625 A.2d at 1170 (citation omitted).

In *Karkaria*, our High Court concluded that that the evidence underlying the various sexual offense convictions was so patently unreliable that it was insufficient. More specifically, the Court noted that the minor complainant's testimony of years-long abuse committed by her stepbrother, which was not supported by any physical evidence, was so vague and inconsistent that the jury was required to speculate as to the commission of any crime. *Id*. at 1172. The victim was fourteen years old as of trial and alleged that the incidents occurred beginning around age eight.

The *Karkaria* Court discussed that, based on the victim's testimony, "the child [reportedly] had been forced to submit to sexual intercourse over 300 times, without ever feeling pain, without any physical evidence to support the contention that she was so victimized, and without any specific recollection by [her] as to a date certain upon which even one of the several hundred assaults occurred." *Id*. at 1171. The victim testified adamantly that the abuse only occurred on Fridays or Saturdays, when the defendant babysat her and when the defendant's brother was absent, but likewise fully conceded that the

defendant would not have been home without this sibling present on those evenings due to a custody arrangement between the defendant's parents. She could only describe one single incident occurring in 1981, which the Court characterized as "disturbingly vague," whereas the Commonwealth's charges were for sexual assaults occurring from 1983 to 1984. Additionally, the victim acknowledged that during that period, she was old enough not to need a babysitter and that the defendant was rarely home due to his school and work commitments. *Id*. Based on these extreme inconsistencies and others, our High Court reversed the convictions.

Appellant compares this matter to **Karkaria**, contending that S.H.'s testimony was likewise deficient. *See* Appellant's brief at 24-27 (discussing a similar delay in prompt reporting and lack of physical evidence). She believes that the facts here even more compellingly warrant reversal, since S.H. was not a helpless child, the attack took place inside a supervised facility during the day, and there were other inmates that would have heard the purported screaming. *Id*. at 27-28. Appellant additionally points to the "incredible" testimony of S.H. being forced to perform oral sex while Appellant was still partially wearing her jumpsuit up to the waist. *Id*. at 28. She states that "[t]he wholly uncorroborated testimony in the matter *sub judice* rises from implausible to impossible when viewed in its totality." *Id*.

In addressing this claim, the trial court first accurately outlined the elements required to be proven by the Commonwealth to establish IDSI,

sexual assault, and indecent assault. **See** Trial Court Opinion, 2/28/25, at 5-6. The court reasoned as follows:

> The complainant's testimony, which this court found credible, established [that] S.H. did not consent to sexual relations with either Appellant or Williams. Appellant trapped S.H. in a jail cell and forcibly assaulted her by using an object to penetrate S.H.'s vagina and forced S.H. to perform oral sex on her. The acts Appellant committed against S.H., constituted "deviate sexual acts" and "indecent contact." They were also against S.H.'s will and without her consent. The uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant.

**Id**. at 6. The court did not discuss the claimed inconsistencies in S.H.'s testimony, instead finding her credible and thereby implicitly rejecting the notion that the court's verdict was founded solely upon speculation or conjecture.

Upon review, we find no merit to Appellant's sufficiency challenge. To begin, the facts here distinguishable from those in **Karkaria**. S.H. was able to testify as to the exact date during which the attack occurred and do so in detail. She recounted that Appellant pulled her into the cell occupied by Appellant and Williams during recreational time. Williams then partially closed the cell door while Appellant penetrated her with a crude object. S.H. attested that she did not fight back due to fear of retaliation from Appellant and her associates in the jail, though she did scream. S.H. also recounted that Appellant forced her to perform oral sex. This is a far cry from the "disturbingly vague" testimony discounted by our High Court. **See Karkaria**, 625 A.2d at 1171. Additionally, we note that S.H.'s account was corroborated

insofar as a medical examination conducted two days after the attack showed injuries to her vagina, and Williams was found several weeks after the assault with an object similar to that described by S.H.

Although Appellant points to inconsistencies that she believes renders S.H. wholly incredible, we are not persuaded. Concerning the allegation that Appellant's jumpsuit was still partially on, which could have prevented the forced oral sex, the record shows that S.H. attempted to clarify these details at trial. *See* N.T. Trial, 2/20/24, at 57-58 (stating Appellant did not remove her jumpsuit "all the way," and nevertheless describing how she positioned herself between Appellant's legs when the demand for oral sex was made). Furthermore, as to Appellant's contention that there would have been a correction officer nearby to hear any screaming, S.H. stated that the incident occurred during recreation time, with multiple inmates being out of their cells, talking, playing cards, and otherwise making noise. *Id*. at 55.

In all, our review of the record does not support the notion that the evidence here was "so unreliable and/or contradictory as to make any verdict based thereon pure conjecture." *Karkaria*, 625 A.2d at 1180. No relief is due.

Relatedly, Appellant next contends that her convictions were against the weight of the evidence. *See* Appellant's brief at 30-35. The following law applies to our review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere

conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up).

Further, "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa.Super. 2017) (citation omitted).

In arguing this issue, Appellant relies on many of the same points discussed above. Particularly, she posits that S.H.'s testimony was so "incredible" that a new trial is warranted. *See* Appellant's brief at 32. She reiterates her opinion that there was "no physical or forensic evidence whatsoever linking Appellant to the crimes alleged." *Id*. at 31 (capitalization altered). Appellant avers that the victim did not promptly report the attack and there were other individuals nearby, including a corrections officer, that would have heard the attack and intervened. *Id*. at 31-32. She also maintains that S.H.'s testimony at trial, that she never saw the dildo used on her, differed from that given at the preliminary hearing, where she claimed to have witnessed it. *Id*. at 32. Appellant states that the description provided

at trial as to the forced oral sex "borders on the absurd, if not impossible." *Id*. at 33. She finds it unbelievable that S.H. would not have fought back, despite being the same size as Appellant and in jail for her own violent felonies, especially considering that no weapons were involved. *Id*. at 32.

The trial court addressed this claim in conjunction with Appellant's sufficiency challenge, discussed *supra*. **See** Trial Court Opinion, 2/28/25, at 5-6. To recap, it generally found the testimony of S.H. to be credible. Hence, implicit in its decision was a rejection of the contrasting points raised by Appellant in her brief. It concluded that S.H. did not consent to any of the acts performed and relied upon caselaw for the proposition that S.H.'s word alone enabled the Commonwealth to prove its case beyond a reasonable doubt. *Id*. at 6.

We find no abuse of discretion with the court's decision to refuse Appellant a new trial. Unlike Appellant, we discern that the certified record amply supports the court's determination that S.H. was a credible witness. Within its description of the factual background, the court equated S.H.'s reporting of the attack two days after it occurred to being "shortly after the incident," thereby rejecting the notion that it was not prompt. *Id*. at 3. Also, by finding S.H. believable, the court accepted her explanation that she did not fight back because she feared being attacked by Appellant, Williams, and others affiliated with them in the jail.

Moreover, as we discussed relating to Appellant's prior issue, S.H. provided testimony clarifying the details surrounding the forced oral sex and

highlighted the loudness of the area during the time of the attack, which would demystify the lack of intervention by personnel. Finally, she explained the purported discrepancy in her preliminary hearing testimony, that she saw the object used against her during the assault, by noting that she was referring to a photograph of a dildo later showed to her by detectives, not the object used during the time. **See** N.T. Trial, 2/20/24, at 72. The police report from this matter similarly confirmed that when S.H. first reported the incident, she stated that she did not see the item during the attack. Rather, she described it based on what it felt like and her knowledge of other inmates collecting materials to make similar items. **Id**. at 78. On this record, the trial court did not abuse its discretion in concluding that its conscience was not shocked by the verdict, and Appellant likewise has not demonstrated any "bias, prejudice, ill-will[,] or partiality" in the court's analysis. **See Santos**, 176 A.3d at 882.

Appellant next challenges the trial court's admission of a photograph depicting a crude, phallic-like object that was found in Williams's cell several weeks after the assault. **See** Appellant's brief at 35-39. We note that "[t]he admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion." **Commonwealth v. Kane**, 188 A.3d 1217, 1229 (Pa.Super. 2018) (citation omitted).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401. Evidence is excluded if its probative value is outweighed by "unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. This Court has explained that "all relevant Commonwealth evidence is meant to prejudice a defendant[,]" thus "exclusion is limited to evidence so prejudicial that it would inflame the [factfinder] to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 n.6 (Pa.Super. 2015) (cleaned up).

Regarding admission of the photograph, the trial court recounted:

In this case, a court of coordinate jurisdiction presided over a pre-trial [motion *in limine*] and ruled that the Commonwealth could introduce the photograph in question because it was both relevant and probative of the issue at hand - whether Appellant and/or Williams had access to an object similar to the one used to assault the complainant.

It was clear from the testimony presented at trial, that the object found in Williams'[s] cell was not the same object used to assault S.H. The court only considered the photograph as evidence that Appellant and Williams had access to or could have made a similar object. As a result, the probative value of the photo was not outweighed by any prejudice it may have caused the defense.

Trial Court Opinion, 2/28/25, at 7-8.

To the contrary, Appellant avers that the object was inadmissible to show that Appellant, as opposed to Williams, could have procured something like it during the assault in question. *See* Appellant's brief at 38. She argues:

A dildo was recovered from [the] co-defendant's cell. And, most significantly, the recovered dildo was found in a different prison than the one in which the assault occurred weeks earlier. In light of these undisputed facts, it cannot be said that the item found in co-defendant's cell in a different prison established that

- 13 -

**Appellant** could have made a similar object or had access to the same.

*Id*. at 38-39 (emphasis in original, some capitalization altered).[3]

We find no abuse of discretion with the trial court's decision. The court correctly found that despite the picture showing an item that was not used in the charged crimes, it nonetheless provided evidence that Williams had the means and ability to craft the object described by the victim. By extension, Appellant, who was Williams's cellmate at the time of the assault, would have had access to it. The testimony additionally established that Appellant grabbed something akin to the recovered object from underneath Williams's bed during the incident and used it to assault S.H. Moreover, the trial court clearly accepted the evidence for a limited purpose, which was to show potential access, not proof of use. Appellant is not entitled to relief on this claim.

Finally, Appellant argues that the court erred in denying her request for a new trial premised upon newly discovered evidence, namely the fact that S.H. hired counsel before trial to potentially file a civil suit against the jail facility. *See* Appellant's brief at 39-48. "When we examine a trial court's

---

[3] Appellant further dedicates a substantial portion of her argument to contesting whether the photograph was admissible under the "similar-weapon exception." *See*, *e.g.*, *Commonwealth v. Christine*, 125 A.3d 394, 396 n.4 (Pa. 2015) (noting that the exception "permits the introduction of a weapon not specifically linked to the crime if the Commonwealth lays a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime" (citation omitted)). However, because the trial court did not consider the photograph to depict the actual item utilized against S.H., this discussion is inapt.

decision to deny a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." ***Commonwealth v. Woeber***, 174 A.3d 1096, 1108 (Pa.Super 2017) (cleaned up).

Our procedural rules dictate that a "post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). In order to obtain the relief requested, Appellant must establish that the newly discovered evidence:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa.Super. 2010) (citation omitted). Appellant was required to "show by a preponderance of the evidence that each of these factors has been met" to secure a new trial. ***Id***.

Appellant contends that knowledge of S.H.'s retention of counsel could not have been discovered by reasonable due diligence; instead, it was something that the victim "hid" throughout trial. ***See*** Appellant's brief at 42-43. Further, she maintains that it was relevant and admissible, as it would have demonstrated S.H.'s bias and inclination to lie. ***Id***. at 43-44. Citing precedent from our High Court, she argues: "It is always the right of a party against whom a witness is called to show by cross-examination that he has an interest direct or collateral in the result of the trial." ***Id***. at 45 (citing ***Commonwealth v. Birch***, 616 A.2d 977 (Pa. 1992)). Appellant concludes:

> Because [S.H.] purposely concealed this fact prior to – and during – trial, a new trial is warranted. The bias arising from her [potential] civil claim should have been explored at trial before the fact finder. The fact that she actively concealed this bias is even more suspicious and troubling. [S.H.] is quite literally hoping to profit from her own act of violating [A]ppellant's constitutional rights. The law of our Commonwealth cannot countenance such a result. [S.H.]'s actions deprived Appellant of the fair trial guaranteed to her by our Commonwealth and nation's constitutions.

*Id*. at 47-48 (cleaned up).

In rejecting Appellant's request for a new trial, the court concluded that Appellant failed to prove two prongs. Specifically, the testimony only went to impeaching S.H, and would not have affected the verdict. *See* Trial Court Opinion, 2/28/25, at 8. It noted that "[t]he question of whether the complainant intended to sue the prison system was solely for impeachment, aiming to show a motive to fabricate [S.H.'s] testimony for financial gain." *Id*. (some capitalization altered). Furthermore, the court determined that as the factfinder in this matter, it would not have rendered a different decision, even if this information had been adduced at trial. *Id*. at 8-9.

We cannot conclude that the trial court abused its discretion or committed an error of law. The evidence highlighted by Appellant concerning S.H.'s retention of counsel would have demonstrated, at most, her potential bias or willingness to lie on the stand. Thus, its value would have been limited to impeaching her credibility. For that reason alone, Appellant failed to satisfy the disjunctive test articulated in *Padillas*.

- 16 -

Moreover, the court was within its discretion to determine that the verdict would have been the same had the evidence been introduced, particularly since this was a bench trial. *See*, *e.g.*, *Commonwealth v. Felder*, 247 A.3d 14, 19 (Pa.Super. 2021) ("After-discovered evidence is 'peculiarly' a question in the trial court's discretion, because that court is uniquely positioned and qualified to appraise the reliability of the original trial and the proposed evidence's impact upon it." (citation omitted)). Finally, we find Appellant's reliance on *Birch* inapposite, since that case dealt with whether a trial court erred in granting a motion *in limine* that precluded defense counsel from questioning a victim about a potential civil suit against the defendant, not whether testimony of a prospective complaint against a third-party would satisfy the newly discovered evidence test.

In sum, based on the issues presented, we have no cause to disturb Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/10/2025

- 17 -