**[J-115-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 15 EM 2020 |
| | : | |
| Petitioner | : | Appeal from the Opinion and Order |
| | : | of the Superior Court at No. 2811 |
| | : | EDA 2018 dated December 16, |
| v. | : | 2019 the Order of the Philadelphia |
| | : | County Court of Common Pleas at |
| | : | No. CP-51-CR-0006367-2016 dated |
| DEMETRIUS MAYFIELD, | : | September 19, 2018 |
| | : | |
| Respondent | : | |
| | : | |
| | : | SUBMITTED:  November 16, 2020 |

**OPINION**

**JUSTICE WECHT**                                    **DECIDED:  March 25, 2021**

In this probation revocation case, the trial court entered an order removing the District Attorney's Office and appointing a private criminal-defense attorney to represent the Commonwealth as a "special prosecutor."  Because we conclude that the court lacked the authority to make such an appointment, we vacate the trial court's order and remand for further proceedings.

The Appellee in this matter, Demetrius Mayfield, pleaded guilty to one count of persons not to possess firearms[1] in May 2018.  Consistent with Mayfield's plea agreement, the trial court imposed a sentence of 11½ to 23 months' imprisonment, to be

_____

[1]     18 Pa.C.S. § 6105.

followed by three years' probation. The court also awarded Mayfield credit for time served and released him on immediate parole.

Two months later, Mayfield was again arrested and charged with various drug and firearms offenses ("the new charges"). Shortly after Mayfield's arrest, the Adult Probation and Parole Department issued a *Gagnon I*[2] summary recommending a detainer. The Department subsequently issued a *Gagnon II* summary in which it asked the trial court to defer Mayfield's revocation hearing pending final disposition of his new charges, with the detainer to remain in place. The court then appointed defense counsel to represent Mayfield and scheduled a status conference for August 31, 2018.

At the status conference, the court directed the Commonwealth to file a motion to revoke Mayfield's probation. The Assistant District Attorney ("ADA") representing the Commonwealth informed the court that, per a recent policy change within the Philadelphia District Attorney's Office ("DAO"), she was required to obtain approval from a supervisor before filing a revocation motion prior to the disposition of new criminal charges. Despite the ADA's hesitation, the court stated that it wanted to "knock this one out"[3] and ordered the parties to appear for a revocation hearing on September 19, 2018.

On September 6, 2018, the parties again appeared before the court, this time at the Commonwealth's request. At that hearing, a different ADA appeared and explained to the court that his supervisor, the DAO's First Assistant, had declined the request to file a revocation motion prior to the disposition of Mayfield's new charges. The ADA also

---

[2]    In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the United States Supreme Court held that probationers are entitled to two hearings when a violation of probation is alleged. First, a preliminary hearing must be held at the time of arrest and detention to discern whether the alleged violation is supported by probable cause. *Id.* at 781-82. Second, a more comprehensive hearing must be held prior to the court rendering a final revocation decision. *Id.* at 782.

[3]    Notes of Testimony ("N.T."), 8/31/2018, at 4.

argued that the DAO has the sole discretion to defer revocation proceedings until the disposition of new charges. In response, the trial court made clear that it intended promptly to hold a revocation hearing. The court also warned the ADA that it intended to proceed "independent of whether or not the Commonwealth decides to do [its] job."[4]

On September 19, 2018, the parties appeared as scheduled for the revocation hearing. When the court asked the Commonwealth to call its first witness, the following exchange took place:

> THE COMMONWEALTH: Your Honor, despite my personal views and the propriety of this proceeding, I'm under very strict instructions from people who probably should be here themselves not to participate in this hearing.
>
> THE COURT: When were you folks going to let me know that?
>
> THE COMMONWEALTH: I apologize, your Honor. I thought that was the understanding.
>
> THE COURT: Are you saying to me that the Commonwealth of Pennsylvania is not going to be represented by the District Attorney's Office of Philadelphia in this matter?
>
> THE COMMONWEALTH: The police officers are here, your Honor.
>
> THE COURT: No. No. No. Listen to my question, [counsel]. Are you saying that the Commonwealth of Pennsylvania is not going to be represented by the District Attorney's Office of Philadelphia at this revocation hearing; yes or no?
>
> THE COMMONWEALTH: If I understand the question correctly, I believe that the answer would be no because—
>
> THE COURT: Thank you. Have a seat. I'm appointing a special prosecutor to represent the Commonwealth of Pennsylvania from the wheel. Mr. Lloyd is here tomorrow, isn't he? James Lloyd. He's here on another case. So I'm going to appoint James Lloyd, Esquire to represent the Commonwealth of Pennsylvania at the revocation hearing. The District Attorney's Office has removed itself.

---

[4]     N.T., 9/6/2018, at 13.

\* \* \* \*

Let the record reflect that the District Attorney's [Office] of Philadelphia has withdrawn its representation from the Commonwealth of Pennsylvania at the revocation hearing on this matter.[5]

After the hearing, the Commonwealth filed a motion for reconsideration and a notice of appeal to the Superior Court.[6]  On the following day, the parties—now joined by the newly appointed special prosecutor, attorney James Lloyd—appeared before the trial court to exchange discovery.  The ADA explained to the court that the DAO had not "removed itself" from the case; rather, it was simply exercising prosecutorial discretion to defer revocation proceedings until after the resolution of Mayfield's new charges.  Defense counsel similarly noted his objection to the trial court's appointment of a special prosecutor.  Following the hearing, the Commonwealth filed a motion to stay the proceedings pending appeal.

On September 27, 2018, the trial court held a hearing on the Commonwealth's motion to stay.  Two ADAs, defense counsel, and the special prosecutor attended the hearing, at which the Commonwealth argued, among other things, that the trial court lacked the authority to remove the DAO from the case.  The Commonwealth further argued that the trial court no longer had jurisdiction to proceed with the revocation hearing while the matter was pending on appeal.  The trial court denied the Commonwealth's motion for reconsideration, but agreed to stay the proceedings pending appeal.[7]

---

[5]     N.T., 9/19/2018, at 46-48.

[6]     The Commonwealth filed an interlocutory appeal as of right after certifying that the order appointing a special prosecutor would substantially handicap the prosecution.  *See* Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").

[7]     On October 3, 2018, James Lloyd filed a motion to substitute counsel, claiming that he cannot act as a court-appointed special prosecutor because he currently

The Commonwealth then filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), in which it challenged the trial court's authority to remove the DAO and appoint a private attorney to act in its stead. In response, the trial court issued an opinion noting that courts of common pleas have the authority to commence violation of probation ("VOP") proceedings at any time.[8] As for the removal of the DAO, the trial court opined that the appointment of a special prosecutor was warranted given the Commonwealth's "unprecedented" and "contemptuous" refusal to participate in the revocation hearing.[9] The court cited as authority for its actions *In re Thirty-Fifth Statewide Investigating Grand Jury*, 112 A.3d 624 (Pa. 2015) (OAJC), in which we held that the supervising judge of a grand jury has the inherent authority to appoint a special prosecutor to investigate allegations that the sanctity of the grand jury has been breached by the attorney for the Commonwealth.

On December 16, 2019, the Superior Court issued a decision recognizing that it lacked jurisdiction to rule on the Commonwealth's appeal.[10] The panel explained that this Court has exclusive jurisdiction over appeals involving the supersession of a district attorney.[11] Accordingly, the Superior Court transferred the appeal to our Court for

---

represents multiple criminal defendants in his capacity as a criminal defense attorney. The trial court did not rule on that motion.

[8]    *See* 42 Pa.C.S. § 9771 ("The court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety."); *accord Commonwealth v. Kates*, 305 A.2d 701, 708 (Pa. 1973) ("When it becomes apparent that the probationary order is not serving this desired end[,] the court's discretion to impose a more appropriate sanction should not be fettered.").

[9]    Trial Court Opinion, 12/31/2018, at 7.

[10]    *Commonwealth v. Mayfield*, 224 A.3d 718 (Pa. Super. 2019).

[11]    Section 722 of the Judicial Code provides that "[t]he Supreme Court shall have exclusive jurisdiction of appeals" involving "[s]upersession of a district attorney by an

resolution.[12] We then ordered additional briefing and invited the Attorney General to submit an *amicus curiae* brief.

The Commonwealth raises one narrow issue for our review: whether the trial court exceeded its authority when it removed the DAO and appointed a special prosecutor to represent the Commonwealth. As with "all questions of law, our standard of review is *de novo*, and our scope of review is plenary."[13]

We begin with the Commonwealth Attorneys Act, which empowers specific entities to represent the Commonwealth in legal matters.[14] Relevant to this case, the Act permits the replacement of one prosecutor with another in at least three circumstances. First, the Attorney General may petition a court to permit his or her office to supersede the district attorney in any criminal action.[15] Second, the president judge of a particular county may request that the Attorney General supersede the district attorney in a criminal proceeding.[16] Third, a district attorney's office may refer a case to the Attorney General for prosecution whenever the office lacks adequate resources or has a conflict of

---

Attorney General or by a court[.]" 42 Pa.C.S. § 722(5); *see also* Pa.R.A.P. 702(c) (providing that petitions for review of special prosecutions or investigations shall be filed in the Supreme Court).

[12] *See* Pa.R.A.P. 751(a) ("If an appeal or other matter is taken to or brought in a court or magisterial district which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper court of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in transferee court on the date first filed in a court or magisterial district.").

[13] *Skotnicki v. Ins. Dep't*, 175 A.3d 239, 247 (Pa. 2017).

[14] 71 P.S. §§ 732-101–732-506.

[15] *Id.* § 732-205(a)(4).

[16] *Id.* § 732-205(a)(5).

interest.[17]  If the Attorney General declines that referral, the district attorney may then refer the matter to a district attorney of a contiguous county; or, if the district attorneys of the contiguous counties decline the referral, the district attorney may refer the matter to a district attorney of a noncontiguous county.[18]

While the Act allows for the substitution of one prosecutor for another in these three situations, all of those circumstances involve the replacement of one duly-elected public official with another.  But nothing in the Commonwealth Attorneys Act, or in any other statute, authorizes trial courts to deputize private attorneys to represent the Commonwealth in criminal matters.  In other words, there is no statute which grants the trial court the authority that it purported to exercise here.

Nor are we persuaded by the trial court's suggestion that courts of common pleas possess inherent authority to summarily remove a district attorney's office and appoint a special prosecutor.  In the trial court's view, such authority can be gleaned from our decision in *Thirty-Fifth Statewide Investigating Grand Jury*.  Unlike the present appeal, however, that case concerned the unique authority of a supervising grand jury judge to appoint a private attorney to investigate a suspected breach of grand jury secrecy.  In upholding the appointment in that case, we concluded that supervising judges have the authority "to appoint a special prosecutor in scenarios in which a grand jury may be considering potential criminal conduct on the part of an Attorney for the Commonwealth (as defined in the Investigating Grand Jury Act) or a closely affiliated official."[19]

---

[17]    *Id.* § 732-205(a)(3).

[18]    18 Pa.C.S. § 9201.

[19]    *In re Thirty-Fifth Statewide Investigating Grand Jury*, 112 A.3d at 629-30 (citation omitted).

Notably, however, our holding in *Thirty-Fifth Statewide Investigating Grand Jury* was based, at least in part, on the extensive powers granted to supervising judges under the Investigating Grand Jury Act. And, despite those broad powers, the Court nevertheless expressly declined to hold that a private attorney appointed to investigate a breach of grand jury secrecy could conduct an "actual prosecution"[20] of the sort that the trial court's order in this case plainly would have required. Put simply, our holding in *Thirty-Fifth Statewide Investigating Grand Jury* did not endorse the appointment of a special prosecutor outside of the grand jury context, nor have we ever endorsed the appointment of a private attorney to prosecute a criminal defendant.

Because we can find no authority (statutory or inherent) authorizing the appointment of a special prosecutor to represent the Commonwealth in VOP proceedings, we vacate the trial court's appointment order. Nevertheless, we caution that our decision should not be interpreted as approving of the Commonwealth's refusal to participate in a prompt VOP hearing as the court instructed. Our law is clear: trial courts have broad authority to modify or terminate their own supervisory orders.[21] And while this Court has expressed a preference for deferring VOP proceedings until after the

---

[20] *Id.* at 630 n.7. Though the special prosecutor in *Thirty-Fifth Statewide Investigating Grand Jury* maintained that his appointment authorized him to submit a grand jury presentment to the Montgomery County district attorney for her consideration, he did not himself seek to initiate an affirmative prosecution on behalf of the Commonwealth. *See id.* ("[W]e do not presently vindicate the pursuit of an actual prosecution by a special prosecutor appointed by a supervising judge, since those are not the facts before us. . . . Rather, the propriety of such a prosecution would appear to remain an issue of first impression in this Court.").

[21] 42 Pa.C.S. § 9771 ("The court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety.").

resolution of a defendant's new charges, we have never held that trial courts lack the discretion to hold VOP hearings prior to a probationer's new trial.[22]

We also express no opinion regarding any other remedies that may have been available to the trial court to address the Commonwealth's refusal to participate in Mayfield's VOP hearing.[23] The only question before us today is whether the trial court had the authority to remove the DAO and appoint a special prosecutor of its own choosing. We hold that it did not. Accordingly, we vacate the trial court's appointment order and remand for further proceedings.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.

---

[22] *See Commonwealth v. Infante*, 888 A.2d 783, 793 (Pa. 2005) (noting this Court's "preference for deferral of VOP sentencing until the final outcome of any new criminal charges"), *partially abrogated on other grounds by Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019); *but see Kates*, 305 A.2d at 706 ("[T]here is no statutory restriction in this State that would prevent the court from holding a hearing where the alleged violation is the commission of an offense during the probationary period prior to the trial for the subsequent offense.").

[23] *See* Trial Court Opinion at 28 ("This Court could have initiated contempt proceedings to force Appellant's refused participation in the probation hearing.").